

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-07-390-CR

ALAA MOHAMAD WEISS                                                   APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

------------

FROM COUNTY CRIMINAL COURT NO. 5 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

A jury convicted appellant Alaa Mohamad Weiss of assault, assessed his punishment at 182 days in jail with a $3,000 fine, and the trial court sentenced him accordingly. Appellant brings ten issues on appeal. We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. Facts

For several days in July 2005, appellant and his wife, Rania, had been arguing over money. On July 15, 2005, Rania called appellant's sister Majd and asked her to help the couple resolve their dispute. That afternoon, Rania went to Majd's house and appellant arrived about an hour later. As they aired their grievances, appellant started cursing Rania's family. Rania objected to that and told him to stop. When he persisted, Rania arose from her chair, crossed the room and placed her bare foot on appellant's leg, which in their culture, signals disrespect. Appellant warned her to move away from him or he would hit her.

When she refused to move away, Majd and her husband Haitham stood up and moved closer to the couple. Appellant also stood, grabbed a remote control from the table, looked Rania in the eye, and struck her in the face with it.

Rania's face went numb. Haitham told her she was bleeding. Rania tried to call the police, but her in-laws took the telephone away from her.

For the next two hours, Rania asked to go to the hospital, but was only given an ice pack and told that she was fine and that she didn't need to go. After she tried to leave on her own but swooned against the door, appellant agreed to take her for medical attention, but instructed her to say that her

2

daughter had hit her with a toy. Appellant and Haitham drove Rania to a CareNow facility, where personnel referred her to the USMD Hospital emergency room.

When she arrived at the hospital, Rania was dizzy, weak, had trouble standing and talking, and her head and eyes hurt. The doctors diagnosed a concussion. Appellant told the doctor that Rania's daughter had hit her. City of Arlington Police Officer Michael Smith came to Rania's room and appellant told him the same story.

The doctor ordered a shot and wanted her to wait at the hospital for thirty minutes, but appellant insisted that she leave after the injection, so he took Rania back to his sister's house. Rania spent the night there but awoke early the next day, gathered her daughter, and drove home.

On the way, Rania felt dizzy and couldn't see properly. Once she arrived home, she called a friend who drove her to the police station where she met with Arlington Police Officer Juan Williams. Officer Williams thought Rania appeared nervous, frightened, and shaken up. She told him she was in pain and felt dizzy. He was concerned that she might faint during the interview. After he took her report, Officer Williams gave her a ride home because she told him she was afraid appellant might be there waiting for her and that he might retaliate against her for talking to the police.

3

Appellant was charged with assault bodily injury on a family member and tried by a jury, which found him guilty, and assessed his sentence at 182 days' confinement with a $3,000 fine. The trial court sentenced appellant accordingly.

### III. Jury Charge

Appellant's first issue is a three-part challenge to the jury charge. In part A, he argues that the trial court erred by combining the defenses of accident and involuntary conduct in an application paragraph. That paragraph reads as follows:

> Therefore, if you believe from the evidence beyond a reasonable doubt that [appellant] . . . did then and there intentionally or knowingly cause bodily injury to RANIA WEISS, a member of [appellant's] family or household, by striking her with a remote control, *but you further believe from the evidence or have a reasonable doubt thereof that the injury was a result of an accident and was not the voluntary act of [the] conduct of [appellant]* you will acquit [appellant] and say by your verdict "Not Guilty (emphasis added)."

Appellant and the State agree that "accident" is not a recognized defense and that the court erred by including it in the charge.[2] Appellant also complains that the charge erroneously combined accident with involuntary conduct, which

---

[2] *See Rogers v. State*, 105 S.W.3d 630, 637–38 (Tex. Crim. App. 2003) ("There is no law and defense of accident in the present penal code, and the bench and bar would be well advised to avoid the term 'accident' in connection with offenses defined by the present penal code.") (quoting *Williams v. State*, 630 S.W.2d 640, 644 (Tex. Crim. App. 1982)).

he contends authorized the jury to acquit only upon finding that appellant acted involuntarily *and* that the injury was an accident.

Appellant preserved neither of these complaints by objecting in the trial court. Although he did raise numerous objections to the charge, none of his objections addressed the word "accident," the use of accident as a defense, or the combination of accident and involuntary conduct in the application paragraph of the charge. Accordingly, we consider whether the error was so egregious and created such harm as to deprive appellant of a fair trial.[3]

Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory.[4] In determining whether jury-charge error is egregiously harmful, we consider the entire charge, the evidence, including contested issues and probative weight, arguments of counsel, and any other relevant information revealed by the record as a whole.[5]

---

[3] *... See* Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2006); *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).

[4] *... Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Hutch*, 922 S.W.2d at 171.

[5] *... Stuhler*, 218 S.W.3d at 719.

5

The jury in this case was instructed that a person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result, and acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. The jury was also instructed that it could find appellant guilty only if it found that he intentionally or knowingly caused bodily injury to Rania Weiss. Viewing the entire charge, the abstract portion, which contained both the required mental state and accompanying definitions, sufficiently instructed the jury on the requisite mental state for the offense. The application paragraph specifically instructed the jury to find appellant guilty only if it found that he intentionally or knowingly caused bodily injury to Rania. Further, in the very next paragraph it instructed, "Unless you so find from the evidence beyond a reasonable doubt or if you have a reasonable doubt thereof, you will acquit the Defendant and say by your verdict 'Not Guilty'."

As for the contested issues and weight of the probative evidence, both sides presented straightforward cases that relied largely on the credibility of their key witnesses. The State maintained that appellant intentionally or knowingly injured Rania by striking her in the face with a remote control, whereas appellant's theory directly contested the intent element and the State's allegation of manner and means. In appellant's opening statement, counsel told

6

the jury that appellant did not intentionally injure Rania and that if she was hit by anything, it was not by the remote control as alleged by the State's information.

Rania's testimony supported the State's theory that appellant intentionally or knowingly injured her by striking her in the face with a remote. She testified that appellant picked up the remote from the table and that he looked her in the eye as he smashed it into her face. Majd's testimony, on the other hand, supported appellant's theory. She testified that the fan, suspended from the low ceiling, was on high because it was summertime, that appellant was under it gesticulating wildly with the remote in his hand, that the remote flew out of his hand, that everyone heard a loud noise, that Rania started bleeding, and that batteries were found near the coffee table, love seat, and an ottoman below the fan. Because these competing versions came largely through the parties' two key witnesses, Rania and Majd, the jury's resolution of the contested issue in the case hinged on its determination of which witness it found more believable. If the jury believed Rania, as it apparently did, it was likely to find appellant guilty, which it did. If it believed Majd, it was likely not to find him guilty whether it believed that Rania's injury was caused by accident, appellant's involuntary act, or both. The straightforward nature of the evidence and the

7

contested issues weighs against a finding that including accident in the charge or combining it with involuntary conduct caused appellant egregious harm.

Considering the arguments of counsel and other relevant information in the record, during voir dire the prosecutor told the venire that the State was required to prove that appellant intentionally or knowingly caused bodily injury to Rania. And during its closing arguments, the State opened and closed by reiterating its burden to prove beyond a reasonable doubt that appellant intentionally or knowingly injured Rania. In his closing remarks, defense counsel noted that while Rania had testified that appellant directly struck her with the remote, appellant had presented testimony from two eyewitnesses that he picked up the remote when Haitham asked him to turn down the television, and that as appellant was talking and moving his hands in an animated way, the remote flew out and apparently struck the ceiling fan. Counsel for appellant argued to the jury that appellant was not guilty because he did not intend for the remote to hit his wife and because he did not knowingly cause her injury since he could not have known that the remote would hit the fan, bounce off it, and strike her in the face.

Defense counsel also argued that although he conceded that Rania had been injured, she had not been injured as alleged in the State's manner and means because she had not been injured by the remote; rather she was hit by

8

a battery that came out of it when it shattered upon hitting the fan. Counsel stressed, "The issue is: Did [appellant] intentionally or knowingly cause bodily injury to Rania Weiss by striking her with a remote control?"

After considering the entirety of the charge, the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel and statements made during the jury selection process, we hold that the charge did not cause appellant egregious harm.[6] Part A of appellant's first issue is overruled.

In part B, appellant complains that the trial court erred by not submitting in the charge his proposed definition of voluntariness and examples of involuntary conduct.

Texas Code of Criminal Procedure article 36.14 provides, in pertinent part, that the trial judge is required to submit to the jury

> a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury.[7]

A defendant is not entitled to have an instruction in the charge worded exactly as he requests, as long as the charge correctly states the law and

---

[6] _See Stuhler_, 218 S.W.3d at 719.

[7] Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon 2007).

9

tracks the applicable statute.[8]  A jury charge that tracks the language of the applicable statute properly sets forth the law applicable to the case.[9]

The trial court's charge instructed the jury "that a person commits an offense only if he voluntarily engages in conduct, including an act, omission, or possession."  This instruction regarding involuntary conduct tracked the language of penal code section 6.01(a).  We overrule part B of appellant's first issue.

In part C, appellant complains that the charge lacked an application paragraph on the manner and means and that it did not direct the jury to acquit if it believed Rania was not hit by a remote control.

An instruction on a defensive issue is not called for if it merely negates an element of the State's case, rather than independently justifying or excusing it through a defense set out in the penal code.[10]  Here, the State had the burden of proving that Rania was injured by the remote control.  Appellant's defensive theory that she was not injured by the remote but actually by a battery merely

---

[8] ... *Thacker v. State*, 889 S.W.2d 380, 399 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd), *cert. denied*, 516 U.S. 810 (1995).

[9] ... *See Casey v. State*, 215 S.W.3d 870, 886–87 (Tex. Crim. App. 2007).

[10] ... *Walters v. State*, 247 S.W.3d 204, 209 (Tex. Crim. App. 2007).

negated an element of which the State had the burden to prove.[11]  The trial court did not err by denying appellant his requested instruction on this issue. Accordingly, we overrule part C.

Having overruled all its parts, we overrule appellant's first issue.

## IV.  Sufficiency of the Evidence

In appellant's second issue, appellant claims the evidence is legally and factually insufficient to support the verdict.

In reviewing legal sufficiency, we consider all the evidence in the light most favorable to the verdict and determine whether a rational juror, based on the evidence and reasonable inferences supported by the evidence, could have found the essential elements of the crime beyond a reasonable doubt.[12]  We defer to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts.[13]

Appellant was tried and convicted for assault causing bodily injury to a family member.  A person commits assault if the person intentionally,

---

[11] *See id.*

[12] *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

[13] *Jackson*, 443 U.S. at 318–19, 99 S. Ct. at 2789; *Hooper*, 214 S.W.3d at 13.

11

knowingly, or recklessly causes bodily injury to another, including the person's spouse.[14]

Appellant claims the evidence is legally insufficient to show that he intended to injure his wife. Rania testified that appellant warned her during an argument to get away from him or he would hit her. She further testified that when she would not move away from him, he picked up a remote control, looked her in the eyes, and smashed it against her face. Finally, she testified that appellant kept her from calling the police, delayed in taking her to the hospital, and only took her on the condition that she say that her daughter hit her with a toy. We hold the evidence is legally sufficient to show appellant intended to injure his wife.

When reviewing factual sufficiency, we view all the evidence in a neutral light, favoring neither party.[15] We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the

---

[14] ... Tex. Penal Code Ann. § 22.01(a)(1) (Vernon Supp. 2009).

[15] ... *Neal v. State*, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).

conviction that the factfinder's determination is manifestly unjust.[16] To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.[17]

Appellant argues that the evidence is factually insufficient to support the verdict because the great weight and preponderance of the evidence showed that Rania was hit accidentally. The evidence weighing in support of this claim includes Rania's statements to medical personnel that her daughter hit her with a toy and appellant's sister's and brother-in-law's testimony that appellant picked up the remote to turn down the television and that while gesticulating during the argument with his wife, the remote flew out of his hand, struck the low-hanging and fast-spinning ceiling fan, causing the remote to shatter and expel a battery onto Rania's face.

The jury is the sole judge of the weight and credibility of the evidence.[18] The defense's presentation of a version of the facts that differs from the

---

[16] _Lancon v. State_, 253 S.W.3d 699, 704–05 (Tex. Crim. App. 2008); _Watson_, 204 S.W.3d at 414–15, 417.

[17] _Watson_, 204 S.W.3d at 417.

[18] _See_ Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); _Margraves v. State_, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000) (disapproved on other grounds by _Laster v. State_, 275 S.W.3d 512 (Tex. Crim. App. 2009)).

State's does not render the evidence insufficient.[19]  The evidence will be held factually insufficient only if it is so weak or so overwhelmed by the great weight and preponderance of the evidence that the verdict shocks the conscience or is manifestly unjust.[20]  Having examined the entire record and considered appellant's arguments, we do not find that standard to have been met in this case.  Because the evidence is both legally and factually sufficient to support the verdict, we overrule appellant's second issue.

## V.  Voir Dire

Appellant contends in his third issue that the trial court abused its discretion by denying his motion for a mistrial after the State informed the venire of appellant's prior acts.  He claims that no instructions could have cured the State's unfairly prejudicial comments and that a fair verdict could not have been reached.

The record during the State's examination of the venire reveals the following:

---

[19] *See Maestas v. State*, 963 S.W.2d 151, 156 (Tex. App.—Corpus Christi 1998) (citing *Anderson v. State*, 701 S.W.2d 868, 872 (Tex. Crim. App. 1985), *cert. denied*, 479 U.S. 870 (1986)), *aff'd*, 987 S.W.2d 59 (Tex. Crim. App.), *cert. denied*, 528 U.S. 834 (1999).

[20] *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417.

MS. MEADOR [for the State]: . . . How punishment is different from the guilt/innocence phase is this. You look at guilt/innocence like a snapshot. Guilt/innocence phase of this trial is going to be a snapshot of what happened on that day in question. That's all you're going to get to hear about, just that day. We can talk about things leading up to it and leading up to the assault in that day, but that's it. Punishment is the whole photo album. Okay.

You're going to get to hear whether or not this defendant has ever been in trouble before. You'll get to hear whether or not the defendant has ever done this to the victim before or someone else. You'll also get to hear what we call character evidence: Is he a good guy, or is he a bad guy? Does that make sense to everyone?

Ms. Knox, I mean, is it typical in a family violence situation for it to just be a one-time thing?

PROSPECTIVE JUROR: Statistics say no.

MS. MEADOR: And punishment would be the time you get to hear about that. Okay. We'll only get to talk about the assault that happened on that day. Does that make sense?

PROSPECTIVE JUROR: Yes.

MS. MEADOR: I don't ever learn. Zigrang?

PROSPECTIVE JUROR: Zigrang.

MR. HUSSAMI: I object. She's implying. She's implying something about she said on this assault on this occasion. She's implying that there was another occasion. We move to strike that and give a proper instruction.

THE COURT: I'll sustain the objection. The State cannot imply what the evidence would be in the punishment phase of this trial. I think she's just asking you general questions.

15

But be careful.

I will sustain the objection.

MR. HUSSAMI: Disregard the – –

THE COURT: Disregard her last statement.

MR. HUSSAMI: And we move for a mistrial.

THE COURT: Denied.

On appeal, appellant complains about this entire exchange. In order to preserve a complaint for our review, a party must have presented to the trial court a timely objection, request, or motion.[21]

We review a trial court's ruling on a motion for mistrial for abuse of discretion.[22] Mistrial is appropriate only when the trial court is faced with error so prejudicial that expending further time and expense would be wasteful and futile.[23] A prompt instruction to disregard usually will cure any prejudice caused by an improper question and answer.[24] To determine whether the trial court

---

[21] Tex. R. App. P. 33.1(a)(1).

[22] *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), *cert. denied*, 542 U.S. 905 (2004); *Trevino v. State*, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999) (citing *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex. Crim. App. 1993)).

[23] *Simpson*, 119 S.W.3d at 272.

[24] *Id.*

16

abused its discretion in denying the motion for mistrial, we balance three factors: (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of conviction absent the misconduct.[25]

Assuming, without deciding, that appellant's objection preserved any error to the prosecutor's first question about whether family violence is typically a one-time thing, and to the venireperson's answer, "Statistics say no," we hold that these remarks, especially given the trial court's prompt instruction, do not warrant the extreme remedy of a mistrial.[26]

As for the prosecutor's next statement—that if appellant had committed other assaults, the jury would hear about them during the punishment phase— assuming it was improper, it was not severe. The trial court's prompt instruction, moreover, cured any error. The judge instructed the panel, "The State cannot imply what the evidence would be in the punishment phase of this trial. I think she's just asking you general questions," and then granted appellant's request for an instruction to disregard the prosecutor's comment. In determining whether the instruction was sufficient to cure error, we consider

---

[25] _..._ _Hawkins v. State_, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

[26] _..._ _See Young v. State_, 137 S.W.3d 65, 67–68 (Tex. Crim. App. 2004) (holding that venireperson's statement in aggravated sexual assault of a child case that in twenty-five years' of social work she had never had a child lie about being sexually assaulted did not warrant a mistrial because an instruction, had it been requested, would have cured any prejudice from the remarks).

17

whether the reference was direct or implied, intentional or inadvertent, detailed or vague, and whether the topic was pursued once the instruction was given.[27] The prosecutor did not directly inform the venire that appellant had committed other assaults, but she implied that such evidence might exist. No details, however, were provided. Moreover, the comment was brief and was not repeated after the trial court's instruction. We hold, therefore, that the trial court's instruction cured any error, and we overrule appellant's third issue.

## VI.  Bill of Exceptions

In his fourth issue, appellant complains that the trial court failed to follow rule of appellate procedure 33.2(c) by filing without signing appellant's corrected bill of exceptions, and he asks us to treat the bill as signed because, otherwise, he would be prevented from presenting his case on appeal. Alternatively, appellant asks that we defer a decision on this issue until remedied by the trial court.

Appellant filed a formal bill of exceptions containing grounds for complaint regarding certain of the trial court's evidentiary rulings, and to which appellant attached a deposition and offense report. The trial court found that the bill was

---

[27] *See Hill v. State*, No. 02-06-00357-CR, 2007 WL 2792863, at *6 (Tex. App.—Fort Worth Sept. 27, 2007, pet. ref'd) (mem. op., not designated for publication) (citing *Kipp v. State*, 876 S.W.2d 330, 339 (Tex. Crim. App. 1994)).

incorrect and in the space provided for suggesting corrections, wrote, "See official court's record." Later, appellant filed a corrected bill, incorporating the trial court's corrections, but attached no order to the bill, therefore, the trial judge's signature does not appear on it. Appellant subsequently filed a bystander's bill, in which he avers that he presented his corrected bill of exceptions to the trial court, requested approval and filing, and that the court informed him that the bill was part of the record, although later appellant discovered that it had not been signed.

Texas Rule of Appellate Procedure 33.2 requires the trial court to sign and file a bill of exceptions if the court believes the bill accurately reflects the proceedings in the court, and if not, the court must prepare, sign, and file such bill, as will, in the judge's opinion, accurately reflect the proceedings.[28]

Appellant raises each of the complaints to which his bills apply in his fifth, sixth, seventh, and eighth issues, which we address below. In order to expedite our decision in this case, we considered appellant's corrected bill in reviewing those issues.[29] As discussed below, upon examining those issues and the record, including appellant's corrected bill, we have determined that none of those issues demonstrate harmful error. Because appellant was not

_____

[28]... Tex. R. App. P. 33.2(c).

[29]... *See* Tex. R. App. P. 2.

19

harmed by any error complained of in the issues to which his bill pertains, he was not harmed by the absence of the trial court's signature on the bill. Accordingly, we overrule issue four.

VII.  Exclusion of Police Report During Cross-Examination of Rania

In his fifth issue, appellant contends that the trial court abused its discretion by excluding Officer Williams's police report during appellant's cross-examination of Rania.

Appellant argues that Officer Williams's report should have been admitted during his cross-examination of Rania because the "Gaskin Rule" codified as rule of evidence 615 provides that when a State's witness has made a report or has given a statement prior to testifying, the defendant, after a timely request, is entitled to inspect and use such report or statement for cross-examination and impeachment purposes.[30]  The rule is limited to a previous report or statement made by the witness herself who is testifying for the State.[31]

---

[30] See Tex. R. Evid. 615; *Gaskin v. State*, 172 Tex. Crim. 7, 8–9, 353 S.W.2d 467, 469 (1962) (op. on reh'g).

[31] *Vaughn v. State*, 634 S.W.2d 310, 312–13 (Tex. Crim. App. 1982); *Artell v. State*, 372 S.W.2d 944, 945 (Tex. Crim. App.), *cert. denied*, 375 U.S. 951 (1963).

Neither the *Gaskin* rule nor its codification as rule 615 is a rule of admissibility.[32] It merely provides for access to a witness's statements to aid in cross examining that witness.[33] Appellant concedes that the State provided Officer Williams's report to him through discovery. The trial court's refusal to admit it in evidence shows no violation of either the *Gaskin* rule or rule 615.

Appellant also argues that exclusion of the report harmed him by preventing him from impeaching Rania with prior inconsistent statements. Specifically, he asserts that he sought to impeach her testimony that the incident occurred at 7:00 p.m.; that appellant was facing her when she was struck and that she was not sure where her in-laws were standing; that appellant grabbed the remote and smashed it into her face; that her in-laws took the telephones away from her and kept her at the house for two hours before taking her to the hospital; that she was taken to the hospital only on the condition that she agreed not to tell the police that appellant hit her; and that she did not remember telling Officer Williams that she told appellant "if you want to hit me, come and hit me."

---

[32] *See* Tex. R. Evid. 615; *Gaskin*, 172 Tex. Crim. at 8–9, 353 S.W.2d at 469.

[33] Tex. R. Evid. 615.

A party may impeach a witness with evidence of a prior inconsistent statement only if the party first gives the witness an opportunity to explain or deny the prior statement.[34] To lay the proper foundation, appellant was required to (1) identify the statement by time, place, and person to whom made (2) summarize the contents, and (3) afford the witness an opportunity to explain or deny the statements.[35] If a party fails to establish this predicate, the trial court should sustain an objection to extrinsic proof of the prior inconsistent statement.[36]

Before offering Officer Williams's report, counsel for appellant asked Rania just three questions about her conversation with Officer Williams, none of which contradicted the testimony appellant now asserts he sought to impeach. First, he asked if she remembered telling the officer that her in-laws helped her by giving her an ice pack, and she agreed that she had told him that. Second and third, he asked if she had told Officer Williams that her in-laws decided to take her to the hospital only after she fell against the door and that they prevented her from leaving. Thus, the record shows that appellant failed

---

[34] Tex. R. Evid. 613(a).

[35] *See Madry v. State*, 200 S.W.3d 766, 769 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

[36] *See id.*

22

to lay the proper predicate for impeachment with prior inconsistent statements. Accordingly, the trial court did not abuse its discretion by excluding Officer Williams's offense report during the cross-examination of Rania. We overrule appellant's fifth issue.

VIII. Exclusion of Police Report During Cross-Examination of the Officer

In his sixth issue, appellant claims that the trial court abused its discretion by not admitting Officer Williams's report during appellant's cross-examination of Officer Williams. Again, appellant relies on the *Gaskin* rule, in addition to a rule requiring disclosure, and the Open Records Act. As with the *Gaskin* rule, neither of these two other bases upon which appellant relies are rules of admissibility of evidence.[37]

We uphold a trial court's evidentiary ruling if it is correct on any theory reasonably supported by the evidence and applicable to the case.[38] Here, appellant argued that the hearsay exception of rule 803(8)(C) applied because the report was offered against the State.

Rule 803(8)(C) provides a hearsay exception for reports of public agencies setting forth factual findings resulting from an investigation pursuant to

[37] *See* Tex. Code Crim. Proc. Ann. art. 39.14 (Vernon Supp. 2009); Tex. Gov't Code Ann. § 552.021 (Vernon 2004); Tex. R. Evid. 615; *Gaskin*, 172 Tex. Crim. at 8–9, 353 S.W.2d at 469.

[38] *See Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

23

authority granted by law, unless the sources of the information or other circumstances indicate a lack of trustworthiness.[39]

Our review of the report shows that it does not consist of "factual findings resulting from an investigation," or the officer's opinions or conclusions based on such findings. To the contrary, the report is a recitation of statements made by Rania in reporting the offense. The trial court reasonably could have excluded the report as outside the scope of the hearsay exception set out in rule of evidence 803(8)(c).[40]

Moreover, appellant offered the report in its entirety. Hearsay statements contained therein would have been subject to exclusion. A trial court is under no duty to sift through a report and separate the admissible from that which is not.[41] We hold, therefore, that the trial court did not err in excluding the entire

---

[39] Tex. R. Evid. 803(8)(C).

[40] See Pilgrim's Pride Corp. v. Smoak, 134 S.W.3d 880, 892 n.2 (Tex. App.—Texarkana 2004, pet. denied); Perry v. State, 957 S.W.2d 894, 897–98 (Tex. App.—Texarkana 1997, pet. ref'd); Ramirez v. State, No. 14-06-00538-CR, 2007 WL 2127719, at *7 (Tex. App.—Houston [14th Dist.] July 26, 2007, pet. ref'd) (mem. op., not designated for publication) (holding that police report prepared by detective and offered against the State did not contain factual findings contemplated by rule 803(8)(c)).

[41] See Crane v. State, 786 S.W.2d 338, 354 (Tex. Crim. App. 1990) (holding that even if a tape recording itself is admissible under a hearsay exception, any statements made in that recording are subject to the hearsay rule); August v. State, No. 02-04-00484-CR, 2006 WL 1174213, at *3 (Tex. App.—Fort Worth May 4, 2006, pet. ref'd) (mem. op., not designated for

report during the cross-examination of Officer Williams. Appellant's sixth issue is overruled.

## IX. Leading Questions

In his seventh issue, appellant contends that the trial court abused its discretion and denied appellant's right to confront and effectively examine an adverse witness by not permitting him to ask leading questions of a witness he called and whom he declared halfway through her testimony was adverse.

Appellant called Detective Elizabeth Edmonds-Hayes as a witness during his case-in-chief. He did not notify the court that he considered her to be an adverse witness when he first called her to the stand. Twenty pages into her testimony, the trial court sustained the State's objection to defense counsel's leading questions. Counsel did not, at that point, inform the trial court that he wished to treat the witness as adverse. Only after the trial court sustained the State's second objection to leading did counsel for appellant inform the court of his desire to treat the witness as adverse.

Texas Rule of Evidence 611 provides that the trial court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of

publication).

25

time, and (3) protect witnesses from harassment or undue embarrassment.[42]

The rule also provides that a party may ask leading questions of a witness it calls who is hostile, an adverse party, or identified with an adverse party.[43]

The State concedes that Detective Edmonds-Hayes was a witness identified with a party adverse to appellant, and that the trial court should have allowed appellant to ask her leading questions, had he made a timely request to do so.

Assuming that the trial court erred by requiring appellant to ask nonleading questions, the error offends rule 611(c). Accordingly, we determine whether the error was harmful under the standard set out in appellate rule 44.2(b).[44]

Under the appropriate standard, we must disregard the error unless it affects appellant's "substantial rights."[45] A substantial right is affected when the error had a substantial and injurious effect or influence in determining the

---

[42] ... Tex. R. Evid. 611(a).

[43] ... Tex. R. Evid. 611(c).

[44] ... *See West v. State*, 169 S.W.3d 275, 279–80 (Tex. App.—Fort Worth 2005, pet. ref'd) (holding that, generally, error is nonconstitutional if the court's ruling merely offends the rules of evidence).

[45] ... Tex. R. App. P. 44.2(b).

jury's verdict.[46]  In making this determination, we must examine the entire record.[47]  Under rule 44.2(b), a conviction should not be reversed when, after examining the record, the reviewing court has a fair assurance that the error did not influence the jury or had but a slight effect.[48]

Our review of the record shows that appellant was not harmed by the trial court's denial of his request to treat Detective Edmonds-Hayes as an adverse witness.  Appellant argues that his inability to lead the witness meant that he could not ask her what avenues of investigation she failed to follow, what questions she failed to ask, and why she failed to ask them.  He further argues that through leading questions, he could have established circumstances surrounding the incident that Rania did not tell the detective, and that he could have thus highlighted the lack of thoroughness in the detective's investigation.

In his corrected bill of exceptions, appellant asserted that he would have asked Detective Edmonds-Hayes about a number of inconsistencies between Rania's testimony at trial and her statements to officers investigating the case.  We have compared appellant's assertions in his bill of exceptions and in his

---

[46] *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

[47] *Burnett v. State*, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002).

[48] *McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005).

brief with the evidence in the record. All of the inconsistencies he presents appear in the record.

Moreover, although the trial court may have denied appellant permission to ask his questions in a leading fashion, it did not prohibit appellant from inquiring into any of the areas he sought to elicit by leading. In fact, appellant elicited much of the evidence from Detective Edmonds-Hayes.

Because appellant was not prevented from making inquiry into any of the areas he asserts he wanted to explore, and because he was able, in fact, to establish through Detective Edmonds-Hayes that inconsistencies existed between Rania's testimony at trial and statements she made to officers, appellant suffered no harm from the trial court's refusal to allow him to ask the detective leading questions.[49] Accordingly, we overrule appellant's seventh issue.

---

[49] *See Davis v. State*, No. 06-05-00222-CR, 2007 WL 858782, at *8 (Tex. App.—Texarkana Mar. 23, 2007, pet. ref'd ) (mem. op., not designated for publication) (holding even under rule 44.2(a) harm analysis there was no harm from the trial court's denial of appellant's request to treat police officer as adverse where appellant failed to show how any particular subject matter of questioning was denied through other means of examination); *Baltazar v. State*, No. 08-02-00447-CR, 2004 WL 1078502, at *3–5 (Tex. App.—El Paso May 13, 2004, no pet.) (not designated for publication).

## X. Rebuttal

In his eighth issue, appellant argues that the trial court abused its discretion by ruling that the defense had rested and that unless the State had rebuttal, he could not present rebuttal, and by denying his request to reopen the evidence.

After calling several witnesses for the defense at guilt–innocence, appellant informed the trial court that he rested his case, but he wanted to call a rebuttal witness. The State then closed, and the trial court informed appellant that because the State had closed without rebuttal, the defense would not be permitted to call a rebuttal witness. In his corrected bill of exceptions, appellant states that he intended to call Sabah Nobani. Appellant attached the deposition of Sabah Nofal, taken in the divorce case between appellant and Rania, to his original bill of exception. Assuming that Sabah Nofal is Sabah Nobani, the deposition shows that Sabah testified she had discussed the assault with Rania, that Rania told her appellant hit her with a remote and gave her a concussion, that she did not know who started the fight, and that she remembered Rania saying that she had kicked appellant but did not know if it was before or after appellant hit her with the remote.

We review a trial court's decision to reopen the evidence under an abuse of discretion standard.[50] A trial court must allow the introduction of evidence at any time before the conclusion of argument if it appears necessary to the due administration of justice.[51] "Due administration of justice" means the trial court should reopen the case if the evidence would materially change in the proponent's favor.[52] To establish a material change, the proponent of the evidence must show that the evidence is more than "just relevant – – it must actually make a difference in the case."[53] Thus, the trial court abuses its discretion by denying a motion to reopen if the evidence the movant seeks to present would materially change the case in the movant's favor.[54]

Sabah's testimony would not have materially changed the case in appellant's favor. At trial, appellant never sought to justify his actions as self defense. Nor did he argue that the seriousness of his striking Rania was mitigated by her provocation. As discussed above, his theories were that he had no intent to strike or injure her and that she was not hit by the remote.

---

[50] *Peek v. State*, 106 S.W.3d 72, 79 (Tex. Crim. App. 2003); *Reeves v. State*, 113 S.W.3d 791, 794 (Tex. App.—Dallas 2003, no pet.).

[51] Tex. Code Crim. Proc. Ann. art. 36.02 (Vernon 2007).

[52] *Peek*, 106 S.W.3d at 79; *Reeves*, 113 S.W.3d at 794.

[53] *Peek*, 106 S.W.3d at 79.

[54] *Reeves*, 113 S.W.3d at 794.

Now he argues that Sabah's testimony would have shored up Majd's credibility by confirming her version of the events: specifically, that Rania kicked appellant. But Sabah could not say whether Rania kicked appellant before or after appellant hit her with the remote. Most of her deposition testimony supported Rania's testimony at trial. We cannot say that testimony that merely shores up the testimony of another witness by confirming a single small detail in that testimony would have materially changed the case in appellant's favor. We hold, therefore, that Sabah's testimony was not necessary to the due administration of justice and that the trial court did not abuse its discretion in refusing appellant's motion to reopen. We overrule appellant's eighth issue.

## XI. Jury Argument

In his ninth issue, appellant contends that two comments by the prosecutor during closing argument at punishment were improper and harmful.

Appellant first complains of the following comment:

> And what's this really all about? It's really all about power and disrespect. Power that he had over his wife and disrespect that he had . . . not only for Rania Weiss but for this court, for six of you for this past four days. The shenanigans, the smoke, mirrors.

31

Appellant did not object to this portion of the State's argument. Therefore, he has forfeited his right to complain about it on appeal.[55]

Appellant also complains of the State's argument that when appellant testified at punishment he denied ever touching Rania, even after the jury had found him guilty. Appellant objected and the trial court overruled. When the prosecutor revisited the subject later during her argument, she said, "He sat on this witness stand, and he doesn't think he did anything wrong. Nothing. Nothing." Appellant did not object to this argument.

To preserve error, a party must continue to object each time impermissible argument is made.[56] Because appellant failed to object when the same line of argument was made, he has forfeited his right to complain about it on appeal.[57] We overrule appellant's ninth issue.

### XII. Medical Report

In his tenth and final issue, appellant complains of the trial court's admission of a medical report showing that Rania had a concussion. We review

---

[55] Tex. R. App. P. 33.1(a)(1)(A); *Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004); *Mathis v. State*, 67 S.W.3d 918, 926–27 (Tex. Crim. App. 2002); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1173 (1997).

[56] *Haliburton v. State*, 80 S.W.3d 309, 315 (Tex. App.—Fort Worth 2002, no pet.).

[57] *See id.*

a trial court's decision to admit or exclude evidence for an abuse of discretion, and we will not reverse that decision unless it falls outside the zone of reasonable disagreement.[58]

Appellant first complains that medical records admitted under the business records hearsay exception and showing that Rania had a concussion and a contusion or a bruise should not have been admitted without a sponsoring expert. If a medical condition is a matter of common knowledge or is within the experience of a layman, expert testimony is not required to explain it.[59] It was within the trial court's discretion to conclude that a concussion and a contusion are medical conditions that are not outside common knowledge or the experience of a layman and therefore do not need an expert to explain them. Therefore, the trial court did not err by admitting the medical records on the basis that they referred to appellant having a concussion and a contusion.

Appellant also complains about a handwritten notation on a page of the medical records titled "Disposition Summary," which refers to appellant refusing to let Rania to stay at the hospital after getting a shot.

---

[58] *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).

[59] *See Hood v. Phillips*, 554 S.W.2d 160, 165–66 (Tex. 1977); *cf. Reed v. State*, 59 S.W.3d 278, 282 (Tex. App.—Fort Worth 2001, pet. ref'd) (holding that medical records were properly excluded when the defendant offered them without a sponsoring expert to support her argument that her confession was involuntary).

Rania testified that she remembered getting a shot at the hospital, that the doctors wanted her to stay, but that appellant made her leave. Appellant did not object to this testimony; therefore he has forfeited his right to complain on appeal about its admission elsewhere in the record.[60]

Before admitting the medical records, the trial court allowed appellant to make his objections to each individual page outside the presence of the jury. Appellant objected to only two pages on confrontation clause grounds.

On appeal, appellant argues these pages contained testimonial statements of a doctor and a nurse that are inadmissible under *Crawford v. Washington*.[61] Medical records created for purposes of treatment and admitted under the business records exception are not testimonial under *Crawford*.[62] Accordingly,

[60] *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *Beheler v. State*, 3 S.W.3d 182, 187 (Tex. App.—Fort Worth 1999, pet. ref'd) (the unobjected-to introduction of evidence from one source forfeits subsequent complaints about the same evidence from another source).

[61] 541 U.S. 36, 124 S. Ct. 1354 (2004).

[62] *Melendez-Diaz v. Massachusetts*, — U.S. —, 129 S. Ct. 2527, 2533 n.2 (2009); *See Crawford,* 541 U.S. at 42, 56, 124 S. Ct. at 1359, 1367; *Berkley v. State*, —S.W.3d—, No. 04-08-00381-CR, 2009 WL 2524926, at *3 (Tex. App.—San Antonio Aug. 19, 2009, no pet.); *Sullivan v. State*, 248 S.W.3d 746, 750 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (holding that substance abuse counselor's notes on appellant's history of drinking, which were contained in medical records, were not testimonial, and their admission in evidence did not violate the Confrontation Clause); *Felix v. State,* No. 05-04-01322-CR, 2005 WL 3163677, at *5 (Tex. App.—Dallas Nov. 29, 2005, no pet.) (not designated for publication) (holding that results of blood alcohol test

introduction of the medical records did not violate appellant's confrontation rights.

We overrule appellant's tenth issue.

### XIII. Conclusion

Having overruled all of appellant's issues, we affirm the judgment of the trial court.[63]

PER CURIAM

PANEL:  CAYCE, C.J.; GARDNER and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  December 10, 2009

---

are not testimonial); *Eslora v. State,* No. 04-04-00112-CR, 2005 WL 763233, at *4 (Tex. App.—San Antonio Apr. 6, 2005, pet. ref'd) (mem. op., not designated for publication) (holding that medical records are not testimonial).

[63] The State raised a single cross point on appeal contending that the trial court erred by including in the jury charge an instruction on voluntary conduct, and appellant filed a motion to quash the cross point.  Because of our disposition of this appeal, we need not address the State's cross point.  We, therefore, deny appellant's motion to quash as moot.