COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-07-390-CR

 

 

ALAA MOHAMAD WEISS                                                     APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
COUNTY CRIMINAL COURT NO. 5 OF TARRANT COUNTY

 

                                              ------------

 

                               MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction

A jury
convicted appellant Alaa Mohamad Weiss of assault,  assessed his punishment at 182 days in jail
with a $3,000 fine, and the trial court sentenced him accordingly.  Appellant brings ten issues on appeal.  We affirm.

 








II.  Facts

For
several days in July 2005, appellant and his wife, Rania, had been arguing over
money.  On July 15, 2005, Rania called
appellant=s sister Majd and asked her to help
the couple resolve their dispute.  That
afternoon, Rania went to Majd=s house
and appellant arrived about an hour later. 
As they aired their grievances, appellant started cursing Rania=s
family.  Rania objected to that and told
him to stop.  When he persisted, Rania
arose from her chair, crossed the room and placed her bare foot on appellant=s leg,
which in their culture, signals disrespect. 
Appellant warned her to move away from him or he would hit her.

When she
refused to move away, Majd and her husband Haitham stood up and moved closer to
the couple.  Appellant also stood,
grabbed a remote control from the table, looked Rania in the eye, and struck
her in the face with it.

Rania=s face
went numb.  Haitham told her she was
bleeding.  Rania tried to call the
police, but her in-laws took the telephone away from her.








For the
next two hours, Rania asked to go to the hospital, but was only given an ice
pack and told that she was fine and that she didn=t need
to go.  After she tried to leave on her
own but swooned against the door, appellant agreed to take her for medical
attention, but instructed her to say that her daughter had hit her with a
toy.  Appellant and Haitham drove Rania
to a CareNow facility, where personnel referred her to the USMD Hospital
emergency room.

When she
arrived at the hospital, Rania was dizzy, weak, had trouble standing and
talking, and her head and eyes hurt.  The
doctors diagnosed a concussion. 
Appellant told the doctor that Rania=s
daughter had hit her.  City of Arlington
Police Officer Michael Smith came to Rania=s room
and appellant told him the same story.

The
doctor ordered a shot and wanted her to wait at the hospital for thirty
minutes, but appellant insisted that she leave after the injection, so he took
Rania back to his sister=s house.  Rania spent the night there but awoke early
the next day, gathered her daughter, and drove home.

On the
way, Rania felt dizzy and couldn=t see
properly.  Once she arrived home, she
called a friend who drove her to the police station where she met with
Arlington Police Officer Juan Williams. 
Officer Williams thought Rania appeared nervous, frightened, and shaken
up.  She told him she was in pain and felt
dizzy.  He was concerned that she might
faint during the interview.  After he
took her report, Officer Williams gave her a ride home because she told him she
was afraid appellant might be there waiting for her and that he might retaliate
against her for talking to the police.








Appellant
was charged with assault bodily injury on a family member and tried by a jury,
which found him guilty, and assessed his sentence at 182 days=
confinement with a $3,000 fine.  The
trial court sentenced appellant accordingly.

III.  Jury
Charge

Appellant=s first issue
is a three-part challenge to the jury charge. 
In part A, he argues that the trial court erred by combining the
defenses of accident and involuntary conduct in an application paragraph.  That paragraph reads as follows:

Therefore, if you believe from the evidence beyond a reasonable doubt
that [appellant] . . . did then and there intentionally or knowingly cause
bodily injury to RANIA WEISS, a member of [appellant=s] family or household,
by striking her with a remote control, but you further believe from the
evidence or have a reasonable doubt thereof that the injury was a result of an
accident and was not the voluntary act of [the] conduct of [appellant] you
will acquit [appellant] and say by your verdict ANot Guilty (emphasis
added).@  

 








Appellant
and the State agree that Aaccident@ is not
a recognized defense and that the court erred by including it in the charge.[2]  Appellant also complains that the charge
erroneously combined accident with involuntary conduct, which he contends
authorized the jury to acquit only upon finding that appellant  acted involuntarily and that the
injury was an accident.  

Appellant
preserved neither of these complaints by objecting in the trial court.  Although he did raise numerous objections to
the charge, none of his objections addressed the word Aaccident,@ the use
of accident as a defense, or  the
combination of accident and involuntary conduct in the application paragraph of
the charge.  Accordingly, we consider
whether the error was so egregious and created such harm as to deprive
appellant of a fair trial.[3]  

Jury-charge
error is egregiously harmful if it affects the very basis of the case, deprives
the defendant of a valuable right, or vitally affects a defensive theory.[4]  In determining whether jury-charge error is
egregiously harmful, we consider the entire charge, the evidence, including
contested issues and probative weight, arguments of counsel, and any other
relevant information revealed by the record as a whole.[5]   








The jury
in this case was instructed that a person acts intentionally with respect to a
result of his conduct when it is his conscious objective or desire to cause the
result, and acts knowingly with respect to a result of his conduct when he is
aware that his conduct is reasonably certain to cause the result.  The jury was also instructed that it could
find appellant guilty only if it found that he intentionally or knowingly
caused bodily injury to Rania Weiss. 
Viewing the entire charge, the abstract portion, which contained both
the required mental state and accompanying definitions, sufficiently instructed
the jury on the requisite mental state for the offense.  The application paragraph specifically
instructed the jury to find appellant guilty only if it found that he
intentionally or knowingly caused bodily injury to Rania.  Further, in the very next paragraph it
instructed, AUnless you so find from the
evidence beyond a reasonable doubt or if you have a reasonable doubt thereof,
you will acquit the Defendant and say by your verdict >Not
Guilty=.@








As for
the contested issues and weight of the probative evidence, both sides presented
straightforward cases that relied largely on the credibility of their key
witnesses.  The State maintained that
appellant intentionally or knowingly injured Rania by striking her in the face
with a remote control, whereas appellant=s theory
directly contested the intent element and the State=s
allegation of manner and means.  In
appellant=s opening statement, counsel
told the jury that appellant did not intentionally injure Rania and that if she
was hit by anything, it was not by the remote control as alleged by the State=s
information.








Rania=s
testimony supported the State=s theory
that appellant intentionally or knowingly injured her by striking her in the
face with a remote.  She testified that
appellant picked up the remote from the table and that he looked her in the eye
as he smashed it into her face.  Majd=s
testimony, on the other hand, supported appellant=s
theory.  She testified that the fan,
suspended from the low ceiling, was on high because it was summertime, that
appellant was under it gesticulating wildly with the remote in his hand, that
the remote flew out of his hand, that everyone heard a loud noise, that Rania
started bleeding, and that batteries were found near the coffee table, love
seat, and an ottoman below the fan. 
Because these competing versions came largely through the parties= two key
witnesses, Rania and Majd, the jury=s
resolution of the contested issue in the case hinged on its determination of
which witness it found more believable. If the jury believed Rania, as it
apparently did, it was likely to find appellant guilty, which it did.  If it believed Majd, it was likely not to
find him guilty whether it believed that Rania=s injury
was caused by accident, appellant=s
involuntary act, or both.  The
straightforward nature of the evidence and the contested issues weighs against
a finding that including accident in the charge or combining it with
involuntary conduct  caused appellant
egregious harm.

Considering
the arguments of counsel and other relevant information in the record, during
voir dire the prosecutor told the venire that the State was required to prove
that appellant intentionally or knowingly caused bodily injury to Rania.  And during its closing arguments, the State
opened and closed by reiterating its burden to prove beyond a reasonable doubt
that appellant intentionally or knowingly injured Rania.  In his closing remarks, defense counsel noted
that while Rania had testified that appellant directly struck her with the
remote, appellant had presented testimony from two eyewitnesses that he picked
up the remote when Haitham asked him to turn down the television, and that as
appellant was talking and moving his hands in an animated way, the remote flew
out and apparently struck the ceiling fan. 
Counsel for appellant argued to the jury that appellant was not guilty
because he did not intend for the remote to hit his wife and because he did not
knowingly cause her injury since he could not have known that the remote would
hit the fan, bounce off it, and strike her in the face.








Defense
counsel also argued that although he conceded that Rania had been injured, she
had not been injured as alleged in the State=s manner
and means because she had not been injured by the remote; rather she was hit by
a battery that came out of it when it shattered upon hitting the fan.  Counsel stressed, AThe
issue is: Did [appellant] intentionally or knowingly cause bodily injury to
Rania Weiss by striking her with a remote control?@

After
considering the entirety of the charge, the evidence, including the contested
issues and weight of the probative evidence, the arguments of counsel and
statements made during the jury selection process, we hold that the charge did
not cause appellant egregious harm.[6]  Part A of appellant=s first
issue is overruled.

In part
B, appellant complains that the trial court erred by not submitting in the charge
his proposed definition of voluntariness and examples of involuntary conduct.

Texas
Code of Criminal Procedure article 36.14 provides, in pertinent part, that the
trial judge is required to submit to the jury 

a written charge distinctly
setting forth the law applicable to the case; not expressing any opinion as to
the weight of the evidence, not summing up the testimony, discussing the facts
or using any argument in his charge calculated to arouse the sympathy or excite
the passions of the jury.[7]








A
defendant is not entitled to have an instruction in the charge worded exactly
as he requests, as long as the charge correctly states the law and tracks the
applicable statute.[8]  A jury charge that tracks the language of the
applicable statute properly sets forth the law applicable to the case.[9]

The
trial court=s charge instructed the jury Athat a
person commits an offense only if he voluntarily engages in conduct, including
an act, omission, or possession.@ This
instruction regarding involuntary conduct tracked the language of penal code
section 6.01(a).  We overrule part B of
appellant=s first issue.

In part
C, appellant complains that the charge lacked an application paragraph on the
manner and means and that it did not direct the jury to acquit if it believed
Rania was not hit by a remote control.








An
instruction on a defensive issue is not called for if it merely negates an
element of the State=s case, rather than
independently justifying or excusing it through a defense set out in the penal
code.[10]  Here, the State had the burden of proving
that Rania was injured by the remote control. 
Appellant=s defensive theory that she was
not injured by the remote but actually by a battery merely negated an element
of which the State had the burden to prove.[11]  The trial court did not err by denying
appellant his requested instruction on this issue.  Accordingly, we overrule part C.

Having
overruled all its parts, we overrule appellant=s first
issue.

IV. 
Sufficiency of the Evidence

In
appellant=s second issue, appellant claims
the evidence is legally and factually insufficient to support the verdict.  

In
reviewing legal sufficiency, we consider all the evidence in the light most
favorable to the verdict and determine whether a rational juror, based on the
evidence and reasonable inferences supported by the evidence, could have found
the essential elements of the crime beyond a reasonable doubt.[12]  We defer to the responsibility of the trier
of fact to fairly resolve conflicts in testimony, to weigh evidence, and to
draw reasonable inferences from basic facts to ultimate facts.[13]









Appellant
was tried and convicted for assault causing bodily injury to a family
member.  A person commits assault if the person
intentionally, knowingly, or recklessly causes bodily injury to another,
including the person=s spouse.[14]  

Appellant
claims the evidence is legally insufficient to show that he intended to injure
his wife.  Rania testified that appellant
warned her during an argument to get away from him or he would hit her.  She further testified that when she would not
move away from him, he picked up a remote control, looked her in the eyes, and
smashed it against her face.  Finally,
she testified that appellant kept her from calling the police, delayed in
taking her to the hospital, and only took her on the condition that she say
that her daughter hit her with a toy.  We
hold the evidence is legally sufficient to show appellant intended to injure
his wife.








When
reviewing factual sufficiency, we view all the evidence in a neutral light,
favoring neither party.[15]  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
factfinder=s determination is clearly wrong
and manifestly unjust or whether conflicting evidence so greatly outweighs the
evidence supporting the conviction that the factfinder=s
determination is manifestly unjust.[16]  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.[17]

Appellant
argues that the evidence is factually insufficient to support the verdict
because the great weight and preponderance of the evidence showed that Rania
was hit accidentally.  The evidence
weighing in support of this claim includes Rania=s
statements to medical personnel that her daughter hit her with a toy and
appellant=s sister=s and
brother-in-law=s testimony that appellant
picked up the remote to turn down the television and that while gesticulating
during the argument with his wife, the remote flew out of his hand, struck the
low-hanging and fast-spinning ceiling fan, causing the remote to shatter and
expel a battery onto Rania=s face. 








The jury
is the sole judge of the weight and credibility of the evidence.[18]  The defense=s
presentation of a version of the facts that differs from the State=s does
not render the evidence insufficient.[19]  The evidence will be held factually
insufficient only if it is so weak or so overwhelmed by the great weight and
preponderance of the evidence that the verdict shocks the conscience or is
manifestly unjust.[20]  Having examined the entire record and considered
appellant=s arguments, we do not find that
standard to have been met in this case. 
Because the evidence is both legally and factually sufficient to support
the verdict, we overrule appellant=s second
issue. 

V.  Voir
Dire

Appellant
contends in his third issue that the trial court abused its discretion by
denying his motion for a mistrial after the State informed the venire of
appellant=s prior acts.  He claims that no instructions could have
cured the State=s unfairly prejudicial comments and
that a fair verdict could not have been reached.

The
record during the State=s examination of the venire
reveals the following:








MS. MEADOR [for the State]: . . . How punishment
is different from the guilt/innocence phase is this.  You look at guilt/innocence like a
snapshot.  Guilt/innocence phase of this
trial is going to be a snapshot of what happened on that day in question.  That=s all you=re going to get to hear about, just that
day.  We can talk about things leading up
to it and leading up to the assault in that day, but that=s it.  Punishment is the whole photo album.  Okay.

 

You=re going to get to hear whether or not this
defendant has ever been in trouble before. 
You=ll get to hear whether or
not the defendant has ever done this to the victim before or someone else.  You=ll also get to hear what we call character
evidence: Is he a good guy, or is he a bad guy? 
Does that make sense to everyone? 

 

Ms. Knox, I mean, is it typical in a family
violence situation for it to just be a one-time thing?

 

PROSPECTIVE JUROR:  Statistics say no.

 

MS. MEADOR: 
And punishment would be the time you get to hear about that.  Okay. 
We=ll only get to talk about
the assault that happened on that day. 
Does that make sense?

 

PROSPECTIVE JUROR:  Yes.

 

MS. MEADOR: 
I don=t ever learn.  Zigrang?

 

PROSPECTIVE JUROR:  Zigrang.

 

MR. HUSSAMI: 
I object.  She=s implying.  She=s implying something about she said on this
assault on this occasion.  She=s implying that there was
another occasion.  We move to strike that
and give a proper instruction.

 

THE COURT: 
I=ll sustain the
objection.  The State cannot imply what
the evidence would be in the punishment phase of this trial.  I think she=s just asking you general
questions. 

 








But be careful.

 

I will sustain the objection.

 

MR. HUSSAMI: 
Disregard the B B 

 

THE COURT: 
Disregard her last statement.

 

MR. HUSSAMI: 
And we move for a mistrial.

 

THE COURT: 
Denied.

 

On
appeal, appellant complains about this entire exchange.  In order to preserve a complaint for our
review, a party must have presented to the trial court a timely objection,
request, or motion.[21]








We
review a trial court=s ruling on a motion for
mistrial for abuse of discretion.[22]  Mistrial is appropriate only when the trial court
is faced with error so prejudicial that expending further time and expense
would be wasteful and futile.[23]  A prompt instruction to disregard usually
will cure any prejudice caused by an improper question and answer.[24]  To determine whether the trial court abused
its discretion in denying the motion for mistrial, we balance three factors:
(1) the severity of the misconduct (prejudicial effect), (2) curative measures,
and (3) the certainty of conviction absent the misconduct.[25]

Assuming,
without deciding, that appellant=s
objection preserved any error to the prosecutor=s first
question about whether family violence is typically a one-time thing, and to
the venireperson=s answer, AStatistics
say no,@ we hold
that these remarks, especially given the trial court=s prompt
instruction, do not warrant the extreme remedy of a mistrial.[26]  








As for
the prosecutor=s next statementCthat if
appellant had committed other assaults, the jury would hear about them during
the punishment phaseC assuming it was improper, it
was not severe.  The trial court=s prompt
instruction, moreover, cured any error. 
The judge instructed the panel, AThe
State cannot imply what the evidence would be in the punishment phase of this
trial.  I think she=s just asking
you general questions,@ and then granted appellant=s
request for an instruction to disregard the prosecutor=s
comment.  In determining whether the
instruction was sufficient to cure error, we consider whether the reference was
direct or implied, intentional or inadvertent, detailed or vague, and whether
the topic was pursued once the instruction was given.[27]  The prosecutor did not directly inform the
venire that appellant had committed other assaults, but she implied that such
evidence might exist.  No details,
however, were provided.  Moreover, the
comment was brief and was not repeated after the trial court=s
instruction.  We hold, therefore, that
the trial court=s instruction cured any error,
and we overrule appellant=s third issue.

VI.  Bill
of Exceptions 

In his
fourth issue, appellant complains that the trial court failed to follow rule of
appellate procedure 33.2(c) by filing without signing appellant=s
corrected bill of exceptions, and he asks us to treat the bill as signed
because, otherwise, he would be prevented from presenting his case on
appeal.  Alternatively, appellant asks
that we defer a decision on this issue until remedied by the trial court.








Appellant
filed a formal bill of exceptions containing grounds for complaint regarding
certain of the trial court=s
evidentiary rulings, and to which appellant attached a deposition and offense
report.  The trial court found that the
bill was incorrect and in the space provided for suggesting corrections, wrote,
ASee
official court=s record.@  Later, appellant filed a corrected bill,
incorporating the trial court=s
corrections, but attached no order to the bill, therefore, the trial judge=s
signature does not appear on it. 
Appellant subsequently filed a bystander=s bill,
in which he avers that he presented his corrected bill of exceptions to the
trial court, requested approval and filing, and that the court informed him
that the bill was part of the record, although later appellant discovered that
it had not been signed.

Texas
Rule of Appellate Procedure 33.2 requires the trial court to sign and file a
bill of exceptions if the court believes the bill accurately reflects the
proceedings in the court, and if not, the court must prepare, sign, and file
such bill, as will, in the judge=s opinion,
accurately reflect the proceedings.[28]








Appellant
raises each of the complaints to which his bills apply in his fifth, sixth,
seventh, and eighth issues, which we address below.  In order to expedite our decision in this
case, we considered appellant=s
corrected bill in  reviewing those
issues.[29]  As discussed below, upon examining those
issues and the record, including appellant=s
corrected bill, we have determined that none of those issues demonstrate
harmful error.  Because appellant was not
harmed by any error complained of in the issues to which his bill pertains, he
was not harmed by the absence of the trial court=s
signature on the bill.  Accordingly, we
overrule issue four.

VII. 
Exclusion of Police Report During Cross-Examination of Rania  

In his
fifth issue, appellant contends that the trial court abused its discretion by
excluding Officer Williams=s  police report during appellant=s
cross-examination of Rania.

Appellant
argues that Officer Williams=s report
should have been admitted during his cross-examination of Rania because the AGaskin
Rule@
codified as rule of evidence 615 provides that when a State=s
witness has made a report or has given a statement prior to testifying, the
defendant, after a timely request, is entitled to inspect and use such report
or statement for cross-examination and impeachment purposes.[30]  The rule is limited to a previous report or
statement made by the witness herself who is testifying for the State.[31]








Neither
the Gaskin rule nor its codification as rule 615 is a rule of
admissibility.[32]  It merely provides for access to a witness=s
statements to aid in cross examining that witness.[33]  Appellant concedes that the State provided
Officer Williams=s report to him through
discovery.  The trial court=s
refusal to admit it in evidence shows no violation of either the Gaskin rule
or rule 615.

Appellant
also argues that exclusion of the report harmed him by preventing him from
impeaching Rania with prior inconsistent statements.  Specifically, he asserts that he sought to
impeach her testimony that the incident occurred at 7:00 p.m.; that appellant
was facing her when she was struck and that she was not sure where her in-laws
were standing; that appellant grabbed the remote and smashed it into her face;
that her in-laws took the telephones away from her and kept her at the house
for two hours before taking her to the hospital; that she was taken to the
hospital only on the condition that she agreed not to tell the police that
appellant hit her; and that she did not remember telling Officer Williams that
she told appellant Aif you want to hit me, come and
hit me.@








A party
may impeach a witness with evidence of a prior inconsistent statement only if
the party first gives the witness an opportunity to explain or deny the prior
statement.[34]  To lay the proper foundation, appellant was
required to (1) identify the statement by time, place, and person to whom made
(2) summarize the contents, and (3) afford the witness an opportunity to
explain or deny the statements.[35]  If a party fails to establish this predicate,
the trial court should sustain an objection to extrinsic proof of the prior
inconsistent statement.[36]  








Before
offering Officer Williams=s report, counsel for appellant
asked Rania just three questions about her conversation with Officer Williams,
none of which contradicted the testimony appellant now asserts he sought to
impeach.  First, he asked if she
remembered telling the officer that her in-laws helped her by giving her an ice
pack, and she agreed that she had told him that.  Second and third, he asked if she had told
Officer Williams that her in-laws decided to take her to the hospital only
after she fell against the door and that they prevented her from leaving.  Thus, the record shows that appellant failed
to lay the proper predicate for impeachment with prior inconsistent
statements.  Accordingly, the trial court
did not abuse its discretion by excluding Officer Williams=s
offense report during the cross-examination of Rania.  We overrule appellant=s fifth
issue.

VIII. 
Exclusion of Police Report During Cross-Examination of the Officer 

In his
sixth issue, appellant claims that the trial court abused its discretion  by not admitting Officer Williams=s report
during appellant=s cross-examination  of Officer Williams.  Again, appellant relies on the Gaskin
rule, in addition to a rule requiring disclosure, and the Open Records
Act.  As with the Gaskin rule,
neither of these two other bases upon which appellant relies are rules of admissibility
of evidence.[37]


We
uphold a trial court=s evidentiary ruling if it is
correct on any theory reasonably supported by the evidence and applicable to
the case.[38]  Here, appellant argued that the hearsay
exception of rule 803(8)(C) applied because the report was offered against the
State.  








Rule
803(8)(C) provides a hearsay exception for reports of public agencies setting
forth factual findings resulting from an investigation pursuant to authority granted
by law, unless the sources of the information or other circumstances indicate a
lack of trustworthiness.[39]

Our
review of the report shows that it does not consist of Afactual
findings resulting from an investigation,@ or the
officer=s
opinions or conclusions based on such findings. 
To the contrary, the report is a recitation of statements made by Rania
in reporting the offense.  The trial
court reasonably could have excluded the report as outside the scope of the
hearsay exception set out in rule of evidence 803(8)(c).[40]








Moreover,
appellant offered the report in its entirety. 
Hearsay statements contained therein would have been subject to
exclusion.  A trial court is under no
duty to sift through a report and separate the admissible from that which is
not.[41]  We hold, therefore, that the trial court did
not err in excluding the entire report during the cross-examination of Officer
Williams.  Appellant=s sixth
issue is overruled.

IX. 
Leading Questions  

In his
seventh issue, appellant contends that the trial court abused its discretion
and denied appellant=s right to confront and
effectively examine an adverse witness by not permitting him to ask leading
questions of a witness he called and whom he declared halfway through her
testimony was adverse.

Appellant
called Detective Elizabeth Edmonds-Hayes as a witness during his
case-in-chief.  He did not notify the
court that he considered her to be an adverse witness when he first called her
to the stand.  Twenty pages into her
testimony, the trial court sustained the State=s
objection to defense counsel=s
leading questions.  Counsel did not, at
that point, inform the trial court that he wished to treat the witness as
adverse.  Only after the trial court
sustained the State=s second objection to leading
did counsel for appellant inform the court of his desire to treat the witness
as adverse.








Texas
Rule of Evidence 611 provides that the trial court shall exercise reasonable
control over the mode and order of interrogating witnesses and presenting
evidence so as to (1) make the interrogation and presentation effective for the
ascertainment of the truth, (2) avoid needless consumption of time, and (3)
protect witnesses from harassment or undue embarrassment.[42]  The rule also provides that a party may ask
leading questions of a witness it calls who is hostile, an adverse party, or
identified with an adverse party.[43]

The
State concedes that Detective Edmonds-Hayes was a witness identified with a
party adverse to appellant, and that the trial court should have allowed
appellant to ask her leading questions, had he made a timely request to do so.

Assuming
that the trial court erred by requiring appellant to ask nonleading questions,
the error offends rule 611(c). 
Accordingly, we determine whether the error was harmful under the
standard set out in appellate rule 44.2(b).[44]








Under
the appropriate standard, we must disregard the error unless it affects
appellant=s Asubstantial
rights.@[45]  A substantial right is affected when the error
had a substantial and injurious effect or influence in determining the jury=s
verdict.[46]  In making this determination, we must examine
the entire record.[47]  Under rule 44.2(b), a conviction should not
be reversed when, after examining the record, the reviewing court has a fair
assurance that the error did not influence the jury or had but a slight effect.[48]

Our
review of the record shows that appellant was not harmed by the trial court=s denial
of his request to treat Detective Edmonds-Hayes as an adverse witness.  Appellant argues that his inability to lead
the witness meant that he could not ask her what avenues of investigation she
failed to follow, what questions she failed to ask, and why she failed to ask
them.  He further argues that through
leading questions, he could have established circumstances surrounding the
incident that Rania did not tell the detective, and that he could have thus
highlighted the lack of thoroughness in the detective=s
investigation.








In his
corrected bill of exceptions, appellant asserted that he would have asked
Detective Edmonds-Hayes about a number of inconsistencies between Rania=s
testimony at trial and her statements to officers investigating the case. We
have compared appellant=s assertions in his bill of
exceptions and in his brief with the evidence in the record.  All of the inconsistencies he presents appear
in the record.  

Moreover,
although the trial court may have denied appellant permission to ask his
questions in a leading fashion, it did not prohibit appellant from inquiring
into any of the areas he sought to elicit by leading.  In fact, appellant elicited much of the
evidence from Detective Edmonds-Hayes.  

Because
appellant was not prevented from making inquiry into any of the areas he
asserts he wanted to explore, and because he was able, in fact, to establish
through Detective Edmonds-Hayes that inconsistencies existed between Rania=s
testimony at trial and statements she made to officers, appellant suffered no
harm from the trial court=s refusal to allow him to ask
the detective leading questions.[49]  Accordingly, we overrule appellant=s
seventh issue.








X. 
Rebuttal

In his
eighth issue, appellant argues that the trial court abused its discretion by
ruling that the defense had rested and that unless the State had rebuttal, he
could not present rebuttal, and by denying his request to reopen the evidence.

After
calling several witnesses for the defense at guiltBinnocence,
appellant informed the trial court that he rested his case, but he wanted to
call a rebuttal witness.  The State then
closed, and the trial court informed appellant that because the State had
closed without rebuttal, the defense would not be permitted to call a rebuttal
witness.  In his corrected bill of
exceptions, appellant states that he intended to call Sabah Nobani.  Appellant attached the deposition of Sabah
Nofal, taken in the divorce case between appellant and Rania, to his original
bill of exception.  Assuming that Sabah
Nofal is Sabah Nobani, the deposition shows that Sabah testified she had
discussed the assault with Rania, that Rania told her appellant hit her with a
remote and gave her a concussion, that she did not know who started the fight,
and that she remembered Rania saying that she had kicked appellant but did not
know if it was before or after appellant hit her with the remote.








We
review a trial court=s decision to reopen the
evidence under an abuse of discretion standard.[50]  A trial court must allow the introduction of
evidence at any time before the conclusion of argument if it appears necessary
to the due administration of justice.[51]  ADue
administration of justice@ means the trial court should
reopen the case if the evidence would materially change in the proponent=s favor.[52]  To establish a material change, the proponent
of the evidence must show that the evidence is more than Ajust
relevant B B it must
actually make a difference in the case.@[53]  Thus, the trial court abuses its discretion
by denying a motion to reopen if the evidence the movant seeks to present would
materially change the case in the movant=s favor.[54]









Sabah=s
testimony would not have materially changed the case in appellant=s
favor.  At trial, appellant never sought
to justify his actions as self defense.  Nor
did he argue that the seriousness of his striking Rania was mitigated by her
provocation.  As discussed above, his
theories were that he had no intent to strike or injure her and that she was
not hit by the remote.  Now he argues
that Sabah=s testimony would have shored up
Majd=s
credibility by confirming her version of the events:  specifically, that Rania kicked
appellant.  But Sabah could not say
whether Rania kicked appellant before or after appellant hit her with the
remote.  Most of her deposition testimony
supported Rania=s testimony at trial.  We cannot say that testimony that merely
shores up the testimony of another witness by confirming a single small
detail  in that testimony would have
materially changed the case in appellant=s
favor.  We hold, therefore, that Sabah=s
testimony was not necessary to the due administration of justice and that the
trial court did not abuse its discretion in refusing appellant=s motion
to reopen.  We overrule appellant=s eighth
issue.

XI.  Jury
Argument  

In his ninth
issue, appellant contends that two comments by the prosecutor during closing
argument at punishment were improper and harmful. 

Appellant
first complains of the following comment:

And what=s this
really all about?  It=s really
all about power and disrespect.  Power
that he had over his wife and disrespect that he had . . . not only for Rania
Weiss but for this court, for six of you for this past four days.  The shenanigans, the smoke, mirrors.








Appellant
did not object to this portion of the State=s
argument.  Therefore, he has forfeited
his right to complain about it on appeal.[55]  

Appellant
also complains of the State=s
argument that when appellant testified at punishment he denied ever touching
Rania, even after the jury had found him guilty.  Appellant objected and the trial court
overruled.  When the prosecutor revisited
the subject later during her argument, she said, AHe sat
on this witness stand, and he doesn=t think
he did anything wrong.  Nothing.  Nothing.@  Appellant did not object to this
argument.  

To
preserve error, a party must continue to object each time impermissible
argument is made.[56]  Because appellant failed to object when the
same line of argument was made, he has forfeited his right to complain about it
on appeal.[57]  We overrule appellant=s ninth
issue.

XII. 
Medical Report  








In his
tenth and final issue, appellant complains of the trial court=s
admission of a medical report showing that Rania had a concussion.  We review a trial court=s
decision to admit or exclude evidence for an abuse of discretion, and we will
not reverse that decision unless it falls outside the zone of reasonable
disagreement.[58]

Appellant
first complains that medical records admitted under the business records
hearsay exception and showing that Rania had a concussion and a contusion or a
bruise should not have been admitted without a sponsoring expert.  If a medical condition is a matter of common
knowledge or is within the experience of a layman, expert testimony is not
required to explain it.[59]  It was within the trial court=s
discretion to conclude that a concussion and a contusion are medical conditions
that are not outside common knowledge or the experience of a layman and
therefore do not need an expert to explain them.  Therefore, the trial court did not err by
admitting the medical records on the basis that they referred to appellant
having a concussion and a contusion.

Appellant
also complains about a handwritten notation on a page of the medical records
titled ADisposition
Summary,@ which
refers to appellant refusing to let Rania to stay at the hospital after getting
a shot.








Rania
testified that she remembered getting a shot at the hospital, that the doctors
wanted her to stay, but that appellant made her leave.  Appellant did not object to this testimony;
therefore he has forfeited his right to complain on appeal about its admission
elsewhere in the record.[60]


Before
admitting the medical records, the trial court allowed appellant to make his
objections to each individual page outside the presence of the jury.  Appellant objected to only two pages on
confrontation clause grounds.








On
appeal, appellant argues these pages contained testimonial statements of a
doctor and a nurse that are inadmissible under Crawford v. Washington.[61]  Medical records created for purposes of
treatment and admitted under the business records exception are not testimonial
under Crawford.[62]  Accordingly, introduction of the medical
records did not violate appellant=s
confrontation rights.

We overrule
appellant=s tenth issue.

XIII. 
Conclusion

Having
overruled all of appellant=s
issues, we affirm the judgment of the trial court.[63]

PER
CURIAM

PANEL:  CAYCE, C.J.; GARDNER and
WALKER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED:  December 10, 2009











[1]See Tex. R. App. P. 47.4.





[2]See Rogers v. State, 105 S.W.3d 630, 637B38 (Tex. Crim. App.
2003)  (AThere is no law and
defense of accident in the present penal code, and the bench and bar would be
well advised to avoid the term >accident= in connection with offenses defined by the
present penal code.@) (quoting Williams v.
State, 630 S.W.2d 640, 644 (Tex. Crim. App. 1982)).





[3]See Tex. Code Crim. Proc.
Ann. art. 36.19 (Vernon 2006); Hutch v. State, 922 S.W.2d 166, 171 (Tex.
Crim. App. 1996); Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App.
1984) (op. on reh=g).





[4]Stuhler v. State, 218 S.W.3d 706, 719
(Tex. Crim. App. 2007); Hutch, 922 S.W.2d at 171.





[5]Stuhler, 218 S.W.3d at 719.





[6]See Stuhler, 218 S.W.3d at 719.





[7]Tex. Code Crim. Proc.
Ann. art. 36.14 (Vernon 2007).





[8]Thacker v. State, 889 S.W.2d 380, 399
(Tex. App.CHouston [14th Dist.]
1994, pet. ref=d), cert. denied,
516 U.S. 810 (1995).





[9]See Casey v. State, 215 S.W.3d 870, 886B87 (Tex. Crim. App.
2007).





[10]Walters v. State, 247 S.W.3d 204, 209
(Tex. Crim. App. 2007).





[11]See id.





[12]Jackson v. Virginia, 443 U.S. 307, 319, 99
S. Ct. 2781, 2789 (1979); Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim.
App. 2007).





[13]Jackson, 443 U.S. at 318B19, 99 S. Ct. at 2789; Hooper,
214 S.W.3d at 13.





[14]Tex. Penal Code Ann. ' 22.01(a)(1) (Vernon
Supp. 2009).





[15]Neal v. State, 256 S.W.3d 264, 275
(Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 1037 (2009); Watson
v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).





[16]Lancon v. State, 253 S.W.3d 699, 704B05 (Tex. Crim. App.
2008); Watson, 204 S.W.3d at 414B15, 417.





[17]Watson, 204 S.W.3d at 417.





[18]See Tex. Code Crim. Proc.
Ann. art. 38.04 (Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919
(Tex. Crim. App. 2000) (disapproved on other grounds by Laster v. State,
275 S.W.3d 512 (Tex. Crim. App. 2009)).





[19]See Maestas v. State, 963 S.W.2d 151, 156
(Tex. App.CCorpus Christi 1998)
(citing Anderson v. State, 701 S.W.2d 868, 872 (Tex. Crim. App. 1985), cert.
denied, 479 U.S. 870 (1986)), aff=d, 987 S.W.2d 59 (Tex.
Crim. App.), cert. denied, 528 U.S. 834 (1999).





[20]See Lancon, 253 S.W.3d at 704; Watson,
204 S.W.3d at 414B15, 417.





[21]Tex. R. App. P.
33.1(a)(1).





[22]Simpson v. State, 119 S.W.3d 262, 272
(Tex. Crim. App. 2003), cert. denied, 542 U.S. 905 (2004); Trevino
v. State, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999) (citing State v.
Gonzalez, 855 S.W.2d 692, 696 (Tex. Crim. App. 1993)).





[23]Simpson, 119 S.W.3d at 272.





[24]Id.





[25]Hawkins v. State, 135 S.W.3d 72, 77 (Tex.
Crim. App. 2004).





[26]See Young v. State, 137 S.W.3d 65, 67B68 (Tex. Crim. App. 2004)
(holding that venireperson=s statement in aggravated sexual assault of a
child case that in twenty-five years= of social work she had never had a child lie
about being sexually assaulted did not warrant a mistrial because an instruction,
had it been requested, would have cured any prejudice from the remarks).





[27]See Hill v. State, No. 02-06-00357-CR,
2007 WL 2792863, at *6 (Tex. App.CFort Worth Sept. 27, 2007, pet. ref=d) (mem. op., not
designated for publication) (citing Kipp v. State, 876 S.W.2d 330, 339
(Tex. Crim. App. 1994)).





[28]Tex. R. App. P. 33.2(c).





[29]See Tex. R. App. P. 2.





[30]See Tex. R. Evid. 615;
Gaskin v. State, 172 Tex. Crim. 7, 8B9, 353 S.W.2d 467, 469 (1962) (op. on reh=g).





[31]Vaughn v. State, 634 S.W.2d 310, 312B13 (Tex. Crim. App.
1982); Artell v. State, 372 S.W.2d 944, 945 (Tex. Crim. App.), cert.
denied, 375 U.S. 951 (1963).





[32]See Tex. R. Evid. 615; Gaskin,
172 Tex. Crim. at 8B9, 353 S.W.2d at 469.





[33]Tex. R. Evid. 615.





[34]Tex. R. Evid. 613(a).





[35]See Madry v. State, 200 S.W.3d 766, 769
(Tex. App.CHouston [14th Dist.]
2006, pet. ref=d).





[36]See id.





[37]See Tex. Code Crim. Proc.
Ann. art. 39.14 (Vernon Supp. 2009); Tex. Gov=t Code Ann. ' 552.021 (Vernon 2004);
Tex. R. Evid. 615; Gaskin, 172 Tex. Crim. at 8B9, 353 S.W.2d at 469.





[38]See Willover v. State, 70 S.W.3d 841, 845
(Tex. Crim. App. 2002).





[39]Tex. R. Evid. 803(8)(C).





[40]See Pilgrim=s Pride Corp. v. Smoak, 134 S.W.3d 880, 892 n.2
(Tex. App.CTexarkana 2004, pet.
denied); Perry v. State, 957 S.W.2d 894, 897B98 (Tex. App.CTexarkana 1997, pet. ref=d); Ramirez v. State,
No. 14-06-00538-CR, 2007 WL 2127719, at *7 (Tex. App.CHouston [14th Dist.] July
26, 2007, pet. ref=d) (mem. op., not
designated for publication) (holding that police report prepared by detective
and offered against the State did not contain factual findings contemplated by
rule 803(8)(c)).





[41]See Crane v. State, 786 S.W.2d 338, 354
(Tex. Crim. App. 1990) (holding that even if a tape recording itself is
admissible under a hearsay exception, any statements made in that recording are
subject to the hearsay rule); August v. State, No.
02-04-00484-CR, 2006 WL 1174213, at *3 (Tex. App.CFort Worth  May 4, 2006, pet. ref=d) (mem. op., not
designated for publication).





[42]Tex. R. Evid. 611(a).





[43]Tex. R. Evid. 611(c).





[44]See West v. State, 169 S.W.3d 275, 279B80 (Tex. App.CFort Worth 2005, pet. ref=d) (holding that,
generally, error is nonconstitutional if the court=s ruling merely offends
the rules of evidence).





[45]Tex. R. App. P. 44.2(b).





[46]King v. State, 953 S.W.2d 266, 271 (Tex.
Crim. App. 1997).





[47]Burnett v. State, 88 S.W.3d 633, 637
(Tex. Crim. App. 2002).





[48]McDonald v. State, 179 S.W.3d 571, 578
(Tex. Crim. App. 2005).





[49]See Davis v. State,
No. 06-05-00222-CR, 2007 WL 858782, at *8 (Tex. App.CTexarkana Mar. 23, 2007, pet.
ref=d ) (mem. op., not
designated for publication) (holding even under rule 44.2(a) harm analysis
there was no harm from the trial court=s denial of appellant=s request to treat police
officer as adverse where appellant failed to show how any particular subject
matter of questioning was denied through other means of examination); Baltazar
v. State, No. 08-02-00447-CR, 2004 WL 1078502, at *3B5 (Tex. App.CEl Paso May 13, 2004, no
pet.) (not designated for publication).





[50]Peek v. State, 106 S.W.3d 72, 79 (Tex.
Crim. App. 2003); Reeves v. State, 113 S.W.3d 791, 794 (Tex. App.CDallas 2003, no pet.).





[51]Tex. Code Crim. Proc.
Ann. art. 36.02 (Vernon 2007).





[52]Peek, 106 S.W.3d at 79; Reeves,
113 S.W.3d at 794.





[53]Peek, 106 S.W.3d at 79.





[54]Reeves, 113 S.W.3d at 794.





[55]Tex. R. App. P.
33.1(a)(1)(A); Threadgill v. State, 146 S.W.3d 654, 667 (Tex. Crim. App.
2004); Mathis v. State, 67 S.W.3d 918, 926B27 (Tex. Crim. App.
2002); Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996), cert.
denied, 520 U.S. 1173 (1997).





[56]Haliburton v. State, 80 S.W.3d 309, 315
(Tex. App.CFort Worth 2002, no
pet.).





[57]See id.





[58]Burden v. State, 55 S.W.3d 608, 615
(Tex. Crim. App. 2001).





[59]See Hood v. Phillips, 554 S.W.2d 160, 165B66 (Tex. 1977); cf.
Reed v. State, 59 S.W.3d 278, 282 (Tex. App.CFort Worth 2001, pet. ref=d) (holding that medical
records were properly excluded when the defendant offered them without a
sponsoring expert to support her argument that her confession was
involuntary).   





[60]See Leday v. State, 983 S.W.2d 713, 718 (Tex.
Crim. App. 1998); Beheler v. State, 3 S.W.3d 182, 187 (Tex. App.CFort Worth 1999, pet. ref=d) (the unobjected-to
introduction of evidence from one source forfeits subsequent complaints about
the same evidence from another source).





[61]541 U.S. 36, 124 S. Ct.
1354 (2004).





[62]Melendez-Diaz v.
Massachusetts, C U.S. C, 129 S. Ct. 2527, 2533
n.2 (2009); See Crawford, 541 U.S. at 42, 56, 124 S. Ct. at 1359, 1367; Berkley
v. State, CS.W.3dC, No. 04-08-00381-CR,
2009 WL 2524926, at *3 (Tex. App.CSan Antonio Aug. 19, 2009, no pet.); Sullivan
v. State, 248 S.W.3d 746, 750 (Tex. App.CHouston [1st Dist.] 2008, no pet.) (holding that
substance abuse counselor's notes on appellant's history of drinking, which
were contained in medical records, were not testimonial, and their admission in
evidence did not violate the Confrontation Clause); Felix v. State, No.
05-04-01322-CR, 2005 WL 3163677, at *5 (Tex. App.CDallas Nov. 29, 2005, no
pet.) (not designated for publication) (holding that results of blood alcohol
test are not testimonial); Eslora v. State, No. 04-04-00112-CR, 2005 WL
763233, at *4 (Tex. App.CSan Antonio Apr. 6, 2005,
pet. ref=d) (mem. op., not
designated for publication) (holding that medical records are not testimonial).





[63]The State raised a single
cross point on appeal contending that the trial court erred by including in the
jury charge an instruction on voluntary conduct, and appellant filed a motion
to quash the cross point.  Because of our
disposition of this appeal, we need not address the State=s cross point.  We, therefore, deny appellant=s motion to quash as
moot.