

**NUMBER 13-10-00047-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**JOSE LUIS CANTU,**                                                                      **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                **Appellee.**

---

**On appeal from the 92nd District Court
of Hidalgo County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Rodriguez**

Appellant Jose Luis Cantu pleaded guilty to murder, and his punishment was tried to a jury, which sentenced him to fifty-five years' incarceration. *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011). By five issues on appeal, Cantu argues that the trial court erred in: (1) allowing hearsay testimony involving statements by the deceased; (2)

denying Cantu's proposed limiting instruction in the jury charge regarding certain prior inconsistent statements made by two of the State's witnesses; (3) admitting various autopsy photographs depicting the deceased's corpse; (4) granting two of the State's challenges for cause during voir dire over Cantu's objections; and (5) refusing to admit letters written by the deceased to Cantu because portions of the letters were in Spanish and were not translated by a certified translator.   We affirm.

## I.   Background

On March 16, 2006, the body of the deceased was found in a shed in her parents' backyard in Pharr, Texas.   She appeared to have been strangled to death, and the autopsy by a Hidalgo County forensic pathologist confirmed the cause of death to be asphyxia by suffocation and strangulation.   Cantu, the deceased's boyfriend, was indicted for the murder.   Cantu pleaded guilty to killing the deceased, but opted to have his punishment tried to the jury.   At the trial on punishment, Cantu raised a sudden passion defense.   His defensive theory was that he and the deceased had a violent argument about whether either of them had been cheating and alleged that, as a result, he caused the deceased's death under the immediate influence of a sudden passion arising from an adequate cause.   *See id.* § 19.02(d).

At the punishment trial, both the State and Cantu presented evidence in support of their respective positions on punishment.   In its charge from the trial court, the jury was ordered to find Cantu guilty of murder pursuant to his guilty plea; was questioned on Cantu's sudden passion defense[1]; and was instructed to sentence Cantu according to its

---

[1] If the jury had accepted Cantu's sudden passion defense, the degree of the crime would have been reduced from first-degree to second-degree murder, and the punishment range would have been two

answer to the sudden passion question. In its verdict, the jury found Cantu guilty, rejected his sudden passion defense, and sentenced him to fifty-five years' incarceration.

## II. Statements Made by the Deceased

By his first issue, Cantu argues that the trial court erred in allowing two of the State's witnesses to testify as to statements made by the deceased regarding her fear of Cantu; Cantu argues that the statements were hearsay. Cristina Casas, the deceased's cousin, testified that the deceased told her that she was scared that if she left Cantu, he would rape and kill her. Similarly, Jessica Robledo, a friend of the deceased, testified that the deceased told her she was afraid of Cantu. The State contends that Cantu failed to preserve his hearsay issue—we agree.

As to Casas's testimony, she testified three times about the deceased's statement that she was afraid Cantu would rape and kill her. Arguably, Cantu objected to the first two instances.[2] But Casas testified as to the same statement a third time, nearly five pages in the reporter's record after the second instance, and Cantu made no objection.

It is a well-settled principle that to preserve error for review on appeal, a defendant must object timely, specifically, and receive an adverse ruling at trial. TEX. R. APP. P. 33.1(a); *Turner v. State*, 805 S.W.2d 423,

---

to twenty years' incarceration. *See* TEX. PENAL CODE ANN. §§ 12.33(a), 19.02(d) (West 2011). The punishment range for first-degree murder is five to ninety-nine years. *See id.* § 12.32(a) (West 2011). Cantu also applied for community supervision, and the jury charge gave the jury the option to sentence Cantu to a term of community supervision for either the first-degree or the second-degree murder. The jury declined to do so.

[2] Several questions prior to the first instance, Cantu made a hearsay objection that was overruled by the trial court. He did not request a running objection, and three questions later, Casas testified for the first time as to the deceased's statement about her fear that Cantu would rape and kill her. Several pages later in the reporter's record, Casas testified for the second time about the deceased's statement. Cantu objected, but not on specific grounds. The trial court sustained this objection, stating that "[s]he (Casas) already answered that," which seems to indicate that the court considered Cantu's objection to be an asked-and-answered objection. For purposes of our analysis, however, we will assume without deciding that the foregoing objections were sufficient to timely alert the trial court to Cantu's hearsay objection concerning the first two instances.

3

> 431 (Tex. Crim. App. 1991). The objecting party must continue to object each time the objectionable evidence is offered. *Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App. 1999); *Ethington v. State*, 819 S.W.2d 854, 858–59 (Tex. Crim. App. 1991). A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).

*Jaynes v. State*, 216 S.W.3d 839, 850 (Tex. App.—Corpus Christi 2006, no pet.). Here, Cantu did not make a running objection to Casas's hearsay statement. As such, he was required to object each time she made the statement, and he failed to do so. The third time Casas made the statement, Cantu lodged no objection to it. Thus, Cantu did not preserve his hearsay issue as to Casas's testimony. *See id.* Further, even if the trial court erred in allowing the first two instances of the statement, that error is not reversible on appeal because the same evidence came in without objection when Casas referred to the identical statement made by the deceased later in her testimony. *See id.*

As to Robledo's testimony, our review of the record indicates that she testified twice that the deceased told her she was afraid of Cantu. Cantu objected to both instances, but not on hearsay grounds. The first objection was based on speculation, which was overruled by the trial court, and the second was an asked-and-answered objection, which was sustained by the court. When a trial objection does not comport with the issue raised on appeal, the appellant has preserved nothing for review. *See* TEX. R. APP. P. 33.1(a); *Resendiz v. State*, 112 S.W.3d 541, 547 (Tex. Crim. App. 2003) (en banc) (citing *Ibarra v. State*, 11 S.W.3d 189, 196 (Tex. Crim. App. 1999)). Here, Cantu's objections at trial to Robledo's testimony—speculation and asked-and-answered—do not comport with the hearsay issue he raises on appeal.

4

Thus, he has not preserved his hearsay complaint about Robledo's testimony for appeal.

Cantu's first issue is overruled.

### III. Limiting Instruction in Jury Charge

By his second issue, Cantu argues that the trial court erred in denying his request to include a limiting instruction in the jury charge regarding certain testimony of two of the State's witnesses, Rey Gaona and Princess Zuniga. Cantu contends that the testimony of these two witnesses was impeached by prior inconsistent statements made by the witnesses to the police and prosecutors. For this reason, Cantu argues that he was entitled to an instruction in the jury charge that would have required the jury to consider the prior inconsistent statements only for purposes of judging the credibility of Gaona and Zuniga.

First, Cantu points to testimony by Gaona on direct examination by the State in which he stated that Cantu told him that he strangled the deceased with a rope or cord. When Gaona testified as such, the State asked Gaona a series of questions related to the statement Gaona gave police during the investigation of the murder. Gaona agreed that he had said in the statement that Cantu told him he had strangled the deceased with his hands and had then tied a cord around her neck to make sure she was dead. The prosecutor then asked Gaona if what he said in his statement was "your testimony here today," to which Gaona replied, "Yes, sir."

Next, Cantu points to testimony by Zuniga on direct examination by the State in which she stated that Cantu told her that he wanted to burn the deceased's family's house down. When Zuniga testified that "that's all [Cantu] said," the State asked Zuniga

5

whether she made a statement to the prosecutor before trial in which she said that Cantu told her "that he wanted to kill [the deceased] and the family by burning down the house." Zuniga agreed that she had. The prosecutor then asked Zuniga if what she said in her statement was "your testimony today," to which Zuniga replied, "Yes."

A prior inconsistent statement is a statement made by a witness before trial that contradicts testimony by the witness at trial. *See Madry v. State*, 200 S.W.3d 766, 769 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (citing *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002) (en banc)). Such a statement may be used to impeach the witness, and when used for this purpose, a trial court must instruct the jury, when requested by the defendant, to limit its consideration of the impeachment evidence to determining the credibility of the witness. *See* TEX. R. EVID. 613(a); *Rankin v. State*, 974 S.W.2d 707, 712 (Tex. Crim. App. 1996) (en banc); *see also* TEX. R. EVID. 105(a). However, having reviewed the record of the trial in this case, we cannot conclude that the foregoing testimony by Gaona and Zuniga was inconsistent with the statements they made prior to trial. Rather, it appears that the State was using the witnesses' prior statements merely to refresh their memories. Thus, we disagree with the premise of Cantu's assertion—neither Gaona nor Zuniga made a prior inconsistent statement, and the State was not using their prior statements for impeachment purposes.

Further, even were we to assume that the State had attempted to impeach its witnesses with their prior statements, we note that Cantu did not request limiting instructions at the time Gaona and Zuniga testified. The Texas Court of Criminal Appeals held in *Hammock v. State* that pursuant to Texas Rule of Evidence 105(a), a

6

defendant must request a limiting instruction when the evidence is first admitted. 46 S.W.3d 889, 893-94 (Tex. Crim. App. 2001); *see* TEX. R. EVID. 105(a) ("When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly; *but, in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal.*") (emphasis added). If the defendant fails to make such a request at that time, the evidence is admitted for all purposes. *Hammock*, 46 S.W.3d at 894-95; *see* TEX. R. EVID. 105(a). The trial court is not then required to include a limiting instruction in the charge to the jury. *Hammock*, 46 S.W.3d at 895. In fact, allowing the jury to consider evidence for all purposes throughout trial and then instructing it, under the jury charge, to consider that same evidence for a limited purpose only "is asking a jury to do the impossible." *Id.* at 894. The danger is that "'the improper inference drawn [from the earlier-considered evidence] cannot later be erased by an instruction in the charge.'" *Id.* (quoting *Jackson v. State*, 992 S.W.2d 469, 478 (Tex. Crim. App. 1999) (en banc)).

Here, because Cantu did not request limiting instructions at the time of Gaona and Zuniga's testimony, the evidence from their testimony was admitted for all purposes, and the jury likely considered it for all purposes throughout the trial. Thus, we cannot conclude that the trial court erred in refusing to include a limiting instruction in the jury charge as it would have been impossible for the jury to erase the inferences it drew from the evidence during the trial. Cantu was required to request a limiting instruction as soon

7

as the complained-of testimony was first admitted. His failure to do so made any limiting instruction in the jury charge untimely and futile for purposes of controlling the jury's perception of the evidence.

Cantu's second issue is overruled.

## IV. Autopsy Photographs

By his third issue, Cantu argues that the trial court erred in admitting seven photographs from the deceased's autopsy. Cantu argues that the photographs were irrelevant, more prejudicial than probative, and thus inadmissible.

The standard of review for the admissibility of evidence is abuse of discretion. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005) (en banc). Under an abuse of discretion standard, we will uphold the decision of the trial court concerning the admissibility of evidence unless the ruling rests outside the zone of reasonable disagreement. *Id.*

Rule 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." TEX. R. EVID. 403. The rule creates a presumption of admissibility of all relevant evidence and authorizes the trial court to exclude such evidence only when there is a "clear disparity between the degree of prejudice of the offered evidence and its probative value." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999). In analyzing whether evidence is more prejudicial than probative, the court should consider: (1) how probative the evidence is; (2) the potential of the evidence to impress the jury in some irrational and indelible way; (3) the time needed by the proponent to develop the evidence; and (4) the

proponent's need for the evidence. *Reese v. State*, 33 S.W.3d 238, 240-41 (Tex. Crim. App. 2000). Under the fourth factor, one relevant inquiry is whether the fact of consequence meant to be established by the evidence is in dispute. *Id.* at 242.

In addition to the foregoing rules of evidence, the admissibility of evidence during the punishment phase is also governed by article 37.07 of the code of criminal procedure. *See Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999) (en banc). Article 37.07, section 3(a)(1) provides:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, [and] the circumstances of the offense for which he is being tried . . . .

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2011). The Texas Court of Criminal Appeals has noted that article 37.07 does not define "relevant" and that the definition of "relevant" under the rules of evidence "is not a perfect fit in the punishment context." *Rogers*, 991 S.W.2d at 265. This is because "[s]entencing presents different issues than a verdict of guilt or innocence [in that] the jury or trial judge chooses from a punishment range, rather than deciding whether a defendant is guilty." *Id.* To that end, the court opined that

> [the] admissibility of evidence at the punishment phase of a non-capital felony offense is a function of policy rather than relevancy. This is so because by and large there are no discreet [sic] factual issues at the punishment stage. There are simply no distinct "fact[s] ... of consequence" that proffered evidence can be said to make more or less likely to exist. Rather, "[d]eciding what punishment to assess is a normative process, not intrinsically factbound."

*Id.* (quoting *Miller-El v. State*, 782 S.W.2d 892, 895–96 (Tex. Crim. App. 1990) (internal

9

footnote and citations omitted)).

Although it is not a "perfect fit" for our analysis, we are nonetheless guided by what the rules of evidence provide regarding relevance. *Id.* (holding that Texas Rule of Evidence 401 "is helpful to determine what should be admissible under article 37.07 section 3(a)"). Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. As to photographs, specifically:

> Generally, a photograph is admissible if verbal testimony as to matters depicted in the photographs is also admissible. [*Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997)]; *Long v. State*, 823 S.W.2d 259, 271-72 (Tex. Crim. App. 1991). In other words, if verbal testimony is relevant, photographs of the same are also relevant. . . . A visual image of the injuries appellant inflicted on the victim is evidence that is relevant to the jury's determination. The fact that the jury also heard testimony regarding the injuries depicted does not reduce the relevance of the visual depiction.
>
> . . . .
>
> A court may consider several factors in determining whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice. These factors include, but are not limited to: the number of exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or color, whether they are close-up, and whether the body depicted is naked or clothed. [*Williams*, 958 S.W.2d at 196]. The availability of other means of proof and the circumstances unique to each individual case must also be considered. *Id.*

*Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007).

Here, the challenged photographs show that the deceased's body was in a state of decomposition. All of the photos show severe discoloration of the skin and bloating. Fulgencio Salinas, M.D., the Hidalgo County forensic pathologist who performed the

autopsy on the deceased, testified as to each of the seven photographs, describing the deceased's injuries depicted in each photograph.[3]   As described by Dr. Salinas, State's exhibit 1 is a close-up of the deceased's neck and shows the groove in her skin made by the cord that strangled her.   State's exhibit 2 depicts the autopsy dissection of the deceased's neck, which shows the injuries caused by the strangulation to her esophagus and the blood vessels in her neck.   State's exhibits 4 and 5 show the deceased's left and right hands; both hands are in a state of decomposition.   State's exhibit 6 is a photograph of the backside of the deceased's body; the backside of her body exhibits white marks where her clothing was, which is a further indication of decomposition.   State's exhibit 7 is another picture of the deceased's neck, which also shows the injury to her neck caused by the cord.   Finally, State's exhibit 8 is a photograph of the deceased's body as it came to the morgue, fully clothed and in an obvious state of decomposition.   As they appear in the record, the photographs are in color and have not been enlarged.[4]   Exhibits 6 and 7 show parts of the deceased's naked body; exhibit 6 shows her buttocks, and exhibit 7 shows the top of her breasts.   The State admitted a total of ninety-three photographs at trial.

Cantu contends that the photographs were not relevant to any disputed issue at trial, as he never contested the cause of death or the type of injuries the deceased suffered, and the photographs were therefore not probative of any issue that was in dispute and were more prejudicial than probative.   However, other factors weighed

---

[3] Although Dr. Salinas did not identify each photo by exhibit number as he was describing them, a comparison of the exhibits and Dr. Salinas's testimony makes plain that he testified as to each of the seven challenged photographs.

[4] It is not clear from the record whether the photographs were given to the jury in the form they appear in the appellate record or whether they were published to the jury on an overhead projector.

heavily in favor of the photographs' admission. Primarily, although the photographs were gruesome, as visual depictions of the injuries Dr. Salinas was describing, the photographs were highly relevant. The photographs were useful to the jury in understanding the extent of the deceased's injuries. And the depiction in the photographs of the severely decomposed state of the deceased's corpse was directly relevant to the State's rebuttal of Cantu's sudden passion defense. *See id.* The fact that Cantu left the deceased's body to decompose in her parents' backyard rebutted his assertions at trial that he cared deeply about the deceased and merely acted out of sudden passion in killing her. In other words, the jury could have decided that Cantu's decision to leave the deceased's body to decompose contradicted his claim that he had strong feelings for the deceased, and the photographs were highly relevant in that regard.

In sum, we conclude that the complained-of photographs helped the jury understand the extent of Garcia's injuries and were demonstrative of Cantu's state of mind. The photographs were highly relevant, and there was no clear disparity between the degree of prejudice of the photographs and their probative value. *See* TEX. R. EVID. 403; *Mozon*, 991 S.W.2d at 847.

What's more, in the punishment context, the photographs were even more relevant because they depicted the circumstances of the crime—the strangulation of the deceased and the manner in which Cantu disposed of the body and left it to decompose in the deceased's parents' backyard. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1). Because our review of the admissibility of the evidence in the punishment context serves a normative, policy function, we cannot say the trial court erred in

12

admitting photographs which aided the jury in understanding the nature of the crime for which it was sentencing Cantu. *See Rogers*, 991 S.W.2d at 265

The trial court therefore did not abuse its discretion in admitting the photographs. *See Martin*, 173 S.W.3d at 467. Cantu's third issue is overruled.

### V. State's Challenges for Cause During Voir Dire

By his fourth issue, Cantu argues that the trial court erred in granting two of the State's challenges for cause over Cantu's objections. We disagree.

"A challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury." TEX. CODE CRIM. PROC. ANN. art. 35.16(a) (West 2006). A challenge for cause may be made for, among others, the following reasons: "the juror has . . . such bodily or mental defect or disease as to render the juror unfit for jury service"; or "the juror has a bias or prejudice in favor of or against the defendant." *Id.* art. 35.16(a)(5), (9). Article 35.16's list of grounds for challenges for cause is not exclusive; a challenge may also be based on any fact that shows the venire member would be incapable or unfit to serve on the jury in that case. *See Mason v. State*, 905 S.W.2d 570, 577 (Tex. Crim. App. 1995) (en banc) (citations omitted).

The trial court is in the best position to evaluate the demeanor and responses of venire members and determine whether they are fit under the law to serve on the jury. *See Broxton v. State*, 909 S.W.2d 912, 917 (Tex. Crim. App. 1995) (en banc) (holding that during our review of voir dire testimony, "we recognize that we are faced with only a cold record, and that we should grant considerable latitude to the trial judge, who had the

13

opportunity to directly observe the demeanor of the venireperson").   Thus, we afford the trial court considerable deference in ruling on challenges for cause; we will reverse a trial court's rulings on a venire member's qualifications only when the record demonstrates a clear abuse of discretion.   *See id.*; *Kemp v. State*, 846 S.W.2d 289, 296 (Tex. Crim. App. 1992) (en banc).   In particular, "[c]hallenges which are not based upon any ground specifically enumerated in the statutes are ordinarily addressed to the sound discretion of the trial judge."   *Mason*, 905 S.W.2d at 577.   We will uphold the trial court's decision so long as it was correct under any theory of law applicable to the case.   *See Jones v. State*, 982 S.W.2d 386, 389 (Tex. Crim. App. 1998) (en banc).

In response to questioning during voir dire about his ability to be fair and impartial, the first challenged venire member stated, "I don't want to be part of it period.   I don't want to have that burden on me."   The State moved to strike the venire member for cause; Cantu objected to the State's motion; and the trial court overruled Cantu's objection and struck the venire member for cause.   Cantu argues that none of the enumerated challenges in article 35.16 apply to the first venire member's testimony.   But as we have already noted, the list of reasons in article 35.16 is not exclusive; so long as the challenge is based on a fact that shows the venire member to be unfit for jury service, it is within the discretion of the trial court to determine the venire member's capability or fitness to serve.   *See Mason*, 905 S.W.2d at 577.   Because the trial court was in the best position to observe the first venire member's responses and demeanor, we cannot conclude that the court acted outside its discretion in determining that the venire member's seemingly emphatic statement that he did not want "the burden" of deciding

14

Cantu's fate rendered him unfit to serve as a fair and impartial member of the jury.[5]

In response to questioning during voir dire about her ability to pronounce judgment in the case, the second challenged venire member stated, "I get very nervous. Right now I am very nervous. I get very emotional." The venire member discussed a previous criminal trial in which she served as a juror that was "horrible for her"; she stated, "I get ill because I already have high blood pressure and I'm a diabetic. . . . So nervousness just raises it." When asked by the prosecutor if "it's sometimes hard to listen to all the evidence," she replied, "Yes." When asked by the prosecutor if this would prevent her "from listening to the entire case or all the facts," she replied, "Yes." The State then moved to strike the venire member for cause; Cantu objected to the State's motion; and the trial court overruled Cantu's objection and struck the venire member for cause. As to this second challenged venire person, there was a clear, enumerated reason under article 35.16 for the trial court to excuse her—she had physical diseases which she claimed would prevent her from listening to all of the evidence in the case. *See* TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(5). And having reviewed the entire voir dire testimony of this venire member, it is clear to this Court that the trial court acted within its discretion in granting the State's challenge for cause.

---

[5] Citing *Jones v. State*, Cantu also argues that, "before a venire[]member can be properly challenged for cause, the law must be fully explained to him." *See* 982 S.W.2d 386, 390 (Tex. Crim. App. 1998) (en banc). Cantu's reliance on *Jones* is misplaced. In *Jones*, the court of criminal appeals stated that "[b]efore a venire[]member can be properly challenged *under Article 35.16(b)(3)*, the law must be explained to him and he must be asked whether he can follow that law regardless of his personal views." *Id.* (emphasis added). Article 35.16(b)(3) provides that the State may make a challenge for cause if the venire member "has a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment." TEX. CODE CRIM. PROC. ANN. art. 35.16(b)(3) (West 2006). Here, however, we have held that the trial court's excusing of the first challenged venire member was permissible not under article 35.16(b)(3) but for reasons not enumerated in article 35.16. Thus, this rule from *Jones* does not apply, and we are not persuaded by this portion of Cantu's argument.

In sum, the record does not clearly show an abuse of discretion by the trial court in excusing either of the foregoing venire members for cause. *See Kemp*, 846 S.W.2d at 296. Cantu's fourth issue is overruled.

## VI. Letters Written by the Deceased to Cantu

By his fifth issue, Cantu argues that the trial court erred in refusing to admit three letters written by the deceased that were written partially in Spanish. Cantu argues that the portions of the letters written in English were admissible and would have shown that the deceased was a jealous, bitter, manipulative, and aggressive person. Cantu argues that he was harmed by the exclusion of the letters as they directly supported his sudden passion defense.

When Cantu attempted to introduce the letters at trial, the State objected on two grounds: first, that the letters were in Spanish and not properly translated by a certified translator; and second, that the letters were hearsay. In response, Cantu proposed that the bailiff, who had served as translator throughout the trial, translate the letters. The trial court rejected this proposal. Cantu also responded to the State's hearsay objection, stating that the letters were admissible because the declarant—the deceased—was unavailable to testify at trial. The trial court sustained the State's objection, stating that "[t]he letters do contain sentences and words in Spanish. . . . At this time I'm not going to admit the documents being admitted as they are."

We review a trial court's exclusion of evidence under an abuse of discretion standard. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). But here, even were we to assume the trial court abused its discretion in excluding the letters on the

16

Spanish translation ground, Cantu was not harmed by the exclusion of the letters. "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ." TEX. R. EVID. 103(a); *see also* TEX. R. APP P. 44.2 (providing that non-constitutional errors "must be disregarded" if they do not "affect substantial rights"); *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). To determine whether a substantial right was affected, we examine the record as a whole and ask whether the error had a substantial and injurious affect on the outcome of the proceeding. *Barshaw*, 342 S.W.3d at 93-94. If we have fair assurance that the error did not influence the jury or had but a slight effect, we will not disturb the jury's finding. *Id.* at 94.

Cantu sought to use the excluded letters to prove that the deceased was a jealous, bitter, and manipulative person who could have provoked a fight that caused Cantu to act out of sudden passion. However, because numerous witnesses at trial, introduced by Cantu, testified as to the same evidence Cantu sought to introduce through the letters, we cannot say that Cantu was harmed by the exclusion of the letters. Cantu's brother testified that the deceased was a jealous person and that, while Cantu and the deceased were dating, the deceased did not allow Cantu to spend time with his brother. Cantu's brother also testified that the deceased would become angry if Cantu was not at home to take her phone calls. Cantu's brother testified that Cantu would come home with torn clothes and scratches, which he assumed were caused by the deceased because she and Cantu were always together; he testified that he witnessed the deceased slap Cantu on the face on multiple occasions. Cantu's sister testified similarly. She testified that

17

Cantu and the deceased did not have a good relationship. She also noted that Cantu often came home with scratches and bite marks and commented to his sister that he and the deceased had had an argument. Finally, Cantu's mother testified that the deceased mistreated Cantu.

Through the foregoing testimony, Cantu provided the jury with the same evidence of the deceased's behavior and demeanor that he sought to admit through the letters and, as such, supported his sudden passion theory in the same way the letters would have. Thus, having examined the record, we cannot conclude that the trial court's exclusion of the letters had anything but a slight effect on the jury's punishment findings. Therefore, even if the trial court erred in excluding the letters, such exclusion did not affect Cantu's substantial rights and does not require reversal on appeal. Cantu's fifth issue is overruled.

## VII. Conclusion

The judgment of the trial court is affirmed.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
1st day of March, 2012.

18